402 F.2d 893
 UNITED STATES of America, for the Use and Benefit of HUMBLE
OIL & REFINING COMPANY, Appellant,
v.
The FIDELITY AND CASUALTY COMPANY OF NEW YORK, and Frank
Burkholder and Robert Burkholder, Jr.,
Co-partners, doing business as
Burkholder and Burkholder,
General Contractors,
Appellees.
 No. 12095.
 United States Court of appeals Fourth Circuit.
 Argued May 10, 1968.
Decided Sept. 29, 1968.
 
 Lewis F. Powell, Richmond, Va., and J. Sloan Kuykendall, Winchester, Va. (Henry H. Whiting, Winchester, Va., and Jack Spain, Jr., Hunton, Williams, Gay, Powell & Gibson, Richmond, Va., and Kuykendall & Whiting, Winchester, Va., on the brief), for appellant.
 Thomas H. McGrail, for appellees.
 Before SOBELOFF, WINTER and CRAVEN, Circuit Judges.
 WINTER, Circuit Judge:
 
 
 1
 Humble Oil & Refining Company, the use plaintiff ('Humble') sued the general contractor, Burkholder and Burkholder ('Burkholder'), and its surety, The Fidelity and Casualty Company of New York ('Fidelity'), for asphalt and petroleum products Humble furnished Burkholder for use on Federal Highway Project No. 100-A-12 (the 'project'), a construction contract to which the Miller Act, 40 U.S.C.A. 270a et seq. (Supp.1967), was applicable. Admittedly the suit was not filed until after one year following Humble's last delivery. Although Humble obtained a default judgment against Burkholder (as yet unsatisfied,) its claim against Fidelity was dismissed because of the one-year period of limitations contained in the Act, notwithstanding its defense that Fidelity was equitably estopped to plead limitations. Because we conclude that the doctrine of equitable estoppel is applicable, we reverse and remand the proceedings for a determination on the merits of the amount owed Humble by Fidelity.
 
 
 2
 * The facts, as found by the district judge and not seriously disputed, are these:
 
 
 3
 Burkholder was a general contracting firm involved in many highway construction projects in the State of Virginia, including this project. Fidelity was the surety on a Miller Act payment bond for the project, as well as others. Humble furnished asphalt and petroleum products to Burkholder and, at the end of 1963, the balance owed to Humble by Burkholder was approximately $28,000.[1] The last delivery made by Humble to Burkholder for the project occurred on December 6, 1963, and thus the one-year limitation period under the Miller Act began to run at that time.
 
 
 4
 When Burkholder failed to pay Humble, the latter, on June 1, 1964, informed Fidelity that it had not received payment from Burkholder on the project and inquired what information Fidelity would require before Fidelity would pay the claim. Fidelity asked for a statement of the amounts due Humble for specific jobs and, on June 23, 1964, Humble furnished a handwritten list of invoices, totaling $15,315.59, which Humble stated were related to the project. Fidelity wrote to Burkholder and asked Burkholder to communicate with Humble directly and make arrangements to settle the claim, and Fidelity advised Humble that it had taken this action. Humble tried, unsuccessfully, to communicate with Burkholder during July and August, and so it communicated with Fidelity again. Fidelity advised that it was sending its representatives to Burkholder to review the latter's financial situation, and that Humble would be apprised of the results within two weeks. When no response within the promised period was received, Humble wrote to Fidelity on September 2, requesting information concerning what steps had been taken to secure payment; and, when no response to this inquiry was forthcoming, Humble, by letter dated September 28, requested its attorneys, Messrs. Hunton, Williams, Gay, Powell & Gibson, of Richmond, Virginia, to assist in collecting the Burkholder account.
 
 
 5
 Mr. Pasco, of the Richmond firm of attorneys, attempted to associate Henry Whiting, Esq., an attorney from Winchester, Virginia, in the collection of the Burkholder account, but Mr. Whiting refused employment because he had recently handled some business for Burkholder. At a later, though unspecified, date, Mr. Whiting, however, did become co-counsel for Humble. Before he was so associated, Mr. Whiting, as phrased by the district judge, did 'keep Mr. Pasco informed in re the financial status of the Burkholders and their then dealings with the bonding company.'
 
 
 6
 Meanwhile, Fidelity became increasingly disturbed about the deteriorating financial condition of Burkholder, and sent various independent auditors to appraise the situation. Finally, a Mr. Condon, Assistant Secretary of Fidelity, conferred with Burkholder in an attempt to secure the completion of several unfinished projects. At this time Fidelity learned from Burkholder that the Humble account was among those which were unpaid, and that Burkholder feared that suit was imminent on this and other accounts, unless suitable arrangements for payment were made. The district judge found that, in conference between Mr. Condon and Burkholder, Fidelity told Burkholder that Fidelity would pay all of the outstanding bills, including the Humble asphalt bill covered by their bond, that were properly proven by delivery invoices and, further, that Fidelity would meet the payroll and the outstanding bills and would pay Frank Burkholder, a copartner of Burkholder, $1,200 per month if he would complete the performance of Burkholder's several contracts. In consideration of Fidelity's promises, the copartners of Burkholder assigned all of their assets to Fidelity.
 
 
 7
 Thereafter, Burkholder conveyed the substance of the arrangement between it and Fidelity to Humble. Humble, in turn, advised its attorneys of the information which it had received. Mr. Pasco wrote to Mr. Whiting that Humble's specific invoices requested by Fidelity were being prepared and would be sent to Burkholder for transmission by him to Fidelity for payment. Mr. Pasco also stated that he would withhold action against Burkholder for a reasonable time to permit Fidelity to respond.
 
 
 8
 On December 1, Humble sent its invoices to Burkholder, with copies to its Richmond attorneys. Mr. Pasco acknowledged receipt of Humble's letter on December 7, and advised Humble that, since it was dealing directly with Burkholder in an effort to determine which accounts were covered by surety bonds, 'I will take no further action in the matter until you request me to do so.' Burkholder checked the pertinent invoices and delivery tickets and forwarded them to the surety on December 21.
 
 
 9
 On January 25, 1965, Fidelity wrote a letter to Humble requesting that certain forms be completed and returned to Fidelity in order to substantiate Humble's claim. The letter was apparently mislaid by Humble, and, when it made an inquiry of Fidelity, duplicate forms were sent. Humble completed, executed and returned these forms, and then, on May 20, 1965, for the first time, Fidelity informed Humble that its claim for payment for materials furnished for the project was barred by limitations. There followed a period of negotiations, involving Fidelity, Burkholder, Humble, and Messrs. Whiting and Pasco. Finally, on October 8, 1965, Fidelity, through Mr. Condon, informed Mr. Whiting (by now employed as an attorney for Humble) that it recognized no obligation to Humble for the project. Humble instituted suit against Burkholder and Fidelity on December 23, 1965.
 
 
 10
 Summarized, therefore, the facts show an acknowledgment by Fidelity of its liability to Humble (although the two parties have never agreed on the precise amount), an explicit promise by Fidelity to Burkholder that Fidelity would pay Burkholder's outstanding debts, which included that owed to Humble for the project, Fidelity's establishment of a procedure for Burkholder to verify the claims against it and submission of the claims to Fidelity for payment, communication of all of the above to Humble, Humble's participation in the procedure for verification and payment of claims, lengthy negotiations between Humble, Burkholder and Fidelity before and after the statute of limitations had run, and forbearance to sue by Humble until Humble was advised that Fidelity would plead the statute, and subsequent negotiations with Fidelity had proved fruitless. Detriment to Humble by this forbearance is manifest, unless Humble is permitted to invoke equitable estoppel.
 
 II
 
 11
 In ordering dismissal, the district judge concluded, in his formal findings of fact and conclusions of law, that Fidelity did not lull Humble into a false security and that there was no deception on the part of Fidelity relied upon by Humble to its detriment. As to the former, the district judge noted that Fidelity had not directly represented to Humble that Fidelity would answer for Burkholder's obligation for the project if the obligation was found just after investigation. From his comments during the course of trial, it appears that the district judge may also have relied upon the fact that Humble had counsel, that Humble's counsel was Virginia's largest law firm, and that counsel was unaware of the period of limitations established by the Miller Act. From the facts, we decide that the district judge's legal conclusion was erroneous.[2]
 
 III
 
 12
 Equitable estoppel is a wellestablished concept[3] invoked by courts to aid a party who, in good faith, has relied, to his detriment, upon the representations of another. A good statement of the rule, made with regard to litigation under the Miller Act, is found in McWaters and Bartlett v. United States, 272 F.2d 291, 296 (10 Cir. 1959):
 
 
 13
 'Estoppel arises where one, by his conduct, lulls another into a false security, and into a position he would not take only because of such conduct. Estoppel, in the event of a disputed claim, arises where one party by his words, acts, and conduct led the other to believe that it would acknowledge and pay the claim, if, after investigation, the claim were found to be just, but when, after the time for suit had passed, breaks off negotiations and denies liability and refuses to pay.'This case added to the statement quoted above the sentence 'To constitute estoppel there must be deception relied upon by the other to his detriment.' This statement has support in other authorities, see, e.g., United States for Use and Benefit of Fogle v. Hal b. Hayes & Associates,221 F.Supp. 260, 263 (N.D.Cal.1963), and, certainly, in the instant case from the facts as we have recited them there is no evidence that Fidelity wilfully misrepresented its intentions regarding Humble's claim. But the rule in this Circuit, which we believe to be the better rule, has, since 1938, been that:
 
 
 14
 'To establish equitable estoppel it is not necessary that actual fraud be shown. It is only necessary to show that the person estopped, by his statements or conduct, misled another to his prejudice.' United States for Use and Benefit of Noland Co. v. Wood, 99 F.2d 80, 82 (4 Cir. 1938).
 
 
 15
 See also, Scarborough v. Atlantic Coast Line R. Co., 202 F.2d 84 (4 Cir. 1953); Tucker v. Owen, 94 F.2d 49 (4 Cir. 1938). The rule of this Circuit is consistent with numerous authorities in other jurisdictions. In the leading case of Bergeron v. Mansour, 152 F.2d 27, 30 (1 Cir. 1945), the Court said:
 
 
 16
 'The plaintiff reasonably relied upon the representations and conduct of the defendant and allowed the statute to run before commencing her action. It is not necessary that the representations and conduct should be labelled as fraudulent in a strict legal sense or that they were made or carried on with an intention to mislead the plaintiff. All the circumstances of the case should be considered to determine whether the adjuster should be permitted to repudiate the consequences of his acts. * * * A person is estopped from denying the consequences of his conduct where that conduct has been such as to induce another to change his position in good faith or such that a reasonable man would rely upon the representations made. * * * Nor is an express promise to waive the statute of limitations necessary to estop a party from pleading the statute as a defense.'[4]
 
 
 17
 In more recent authority, the Supreme Court has intimated that deception is not a necessary ingredient to estoppel. In Glus v. Brooklyn Eastern District Terminal, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959), a case arising under the Federal Employers' Liability Act, plaintiff alleged that one of defendant's agents had fraudulently or unintentionally misstated certain facts regarding the applicable period of limitations. The Supreme Court held that plaintiff's action was not barred after the statute of limitations had run, and that he was entitled to a trial on the merits if he could prove that defendant's agents had so conducted themselves that plaintiff was 'justifiably misled into a good-faith belief that he could begin his action at any time within seven years after it had accrued.' Id., at 235, 79 S.Ct. at 763.
 
 
 18
 Thus, we conclude that the absence of proof of fraud or deception on the part of Fidelity is not fatal to its being estopped to plead Miller Act limitations where, as we have shown, there has been a representation, reliance, change of position and detriment.
 
 IV
 
 19
 The other factors which appear to have induced the district judge to reject the plea of estoppel are legally insufficient to support that result.
 
 
 20
 The lack of direct communication by Fidelity to Humble that Fidelity would honor Humble's valid[5] claims, as distinguished from the indirect communication via Burkholder which actually occurred, is of little moment. First, at the time that Burkholder communicated Fidelity's promise to Humble, Fidelity had assumed control of Burkholder's business and it had employed Frank Burkholder at a salary of $1,200 per month to complete Burkholder's construction contracts. Staving off creditors under circumstances like these was Burkholder's and Fidelity's business, so that we think that Frank Burkholder was Fidelity's agent, acting within the scope of his authority, with the result that, in fact, there was direct communication between Fidelity and Humble. Restatement, Agency 2d 27 (1957).
 
 
 21
 Even if Frank Burkholder were not considered Fidelity's agent, Fidelity should reasonably have anticipated that its promise to Burkholder would be repeated to Humble. Indeed, we think it would be unreasonable for Fidelity to entertain any thought that Burkholder would not broadcast Fidelity's promise to interested parties, because as a copartner of Burkholder, Frank Burkholder was in the seat of primary liability to creditors pressing their claims, and he thus had a direct interest in assuaging them. For estoppel, reasonable foreseeability of reliance is sufficient to define the scope of the promise to which the promisor should be held-- both with respect to its terms and the promises included therein.[6]
 
 
 22
 Nor do we consider the fact that Humble had counsel some two and one-half months before limitations had run, a necessary bar to its right to invoke estoppel. The cases are legion where estoppel was successfully pleaded even though a party was represented by counsel.[7] An attorney may be justifiably lulled into a sense of false security as much as his client. To adopt a rule that employment of counsel precludes resort to equitable estoppel would constitute a departure from the salutary policy of encouraging the amicable settlement of legal disputes without resort to the courts if an attorney, short of obtaining a binding contract not to plead limitations, were required to sue even though his opponent represented that he would honor the claim. Of course, an attorney may not in some circumstances be justified in relying upon representations made to him, where a less sophisticated citizen would still have access to the estoppel doctrine,[8] but no such circumstances exist in this case. At most, the presence of counsel is only a factor, not necessarily determinative, of whether a party justifiably relied to his detriment upon the representation of another.[9]
 
 
 23
 In regard to unawareness of the statutes of limitations, we have been cited to no authority, nor have we ourselves located any, which places significance upon knowledge of the statute on the part of the party pleading equitable estoppel or his attorney. In those cases which have commented upon or hypothesized the attorney's lack of awareness of the statute, this factor has not been considered of great significance.[10] Furthermore, there appears no reason in principle why knowledge of the statutory period should be a critical factor in the invocation of equitable estoppel. It may well be a salutary rule in practice for an attorney to apprise himself of the pertinent limitations periods on those claims for which he is called upon for assistance in collection in any respect. Nevertheless, the gravamen of equitable estoppel is that the party so pleading was induced to rely upon certain representations (was 'lulled into a false sense of security')-- in the instant case that the surety would amicably settle Humble's claim, thus obviating the necessity for any formal legal action on Humble's part, not that he was fully aware of the consequences of reliance should it prove to have been mistaken.
 
 
 24
 Without determining the outer limits of when suit must be brought if invocation of the doctrine of equitable estoppel is to be successful, we do not think that the lapse of two and one-half months between Fidelity's final rejection of Humble's claim and the institution of suit was exceptional.
 
 
 25
 For these reasons, we reverse the order of dismissal and direct that the action be restored to the docket for trial so as to afford the parties the opportunity to litigate the amount owed by Fidelity to Humble for materials and supplies furnished by Humble for the project.
 
 
 26
 Reversed and remanded.
 
 
 
 [1]
 We express no view of how much of this sum arose from the furnishing of materials for the project. This question is one for further litigation in the district court
 
 
 [2]
 Fidelity argues that the district judge's overall conclusions that 'There is no evidence in this case that the bonding company lulled Humble into a false security-- There was no deception * * * relied on by Humble to its detriment' constitute findings of fact, the correctness of which is to be tested by the 'clearly erroneous' rule. Rule 52, Fed.R.Civ.Pro. The district judge made detailed evidentiary findings concerning the transactions between the parties. Those quoted are conclusions of law the correctness of which is to be tested by applying legal principles to the evidentiary facts as found. Galena Oaks Corp. v. Scofield, 218 F.2d 217 (5 Cir. 1954)
 
 
 [3]
 An early statement of the principle by the United States Supreme Court is as follows:
 'The principle is that where one party has by his conduct induced the other party to a transaction to give him an advantage which it would be against equity and good conscience for him to assert, he would not in a court of justice be permitted to avail himself of that advantage. And although the cases to which this principle is to be applied are not as well defined as could be wished, the general doctrine is well understood and is applied by courts of law as well as equity where the technical advantage thus obtained is set up and relied on to defeat the ends of justice or establish a dishonest claim.' Union Mut. Life Ins. Co. v. Wilkinson, 80 U.S. (13 Wall.) 222, 233, 20 L.Ed. 617 (1872), quoted with approval in Glus v. Brooklyn Eastern District Terminal, 359 U.S. 231, 234, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959). See generally, 3 Pomeroy on Equity Jurisprudence 803-13 (5th ed. 1941).
 
 
 [4]
 To the same effect, see. e.g., Peters v. St. Paul Fire & Marine Ins. Co., 213 F.Supp. 441 (S.D.N.Y.1963); Delson v. Minoque, 190 F.Supp. 935 (E.D.N.Y.1961); Howard v. West Jersey & S.S.R.R., 102 N.J.Eq. 517, 141 A. 755 (1928), aff'd., 104 N.J.Eq. 201 144 A. 919 (1929). See, Kondo v. Katzenbach, 123 U.S.App.D.C. 12, 356 F.2d 351, 366 (1966) (Wright, J. dissenting); United States for use of E.E. Black Limited v. Price-McNemar Constr. Co., 320 F.2d 663 (9 Cir. 1963). See generally, 3 Pomeroy, supra, note 3, 803, 805, 808, 808B, 811
 
 
 [5]
 We reject Fidelity's argument to us that 'valid' claims are only those otherwise valid and not barred by limitations. It suffices that, irrespective of limitations, Fidelity has honored claims of other creditors, except Humble, in accordance with its promise
 
 
 [6]
 See, e.g., Waugh v. Lennard, 69 Ariz. 214, 211 P.2d 806 (1949); Bender v. Brooks, 61 Tex.Civ.App. 464, 130 S.W. 653 (1910); 3 Pomeroy, supra, note 3, 811, and cases cited therein; cf., 1 Williston on Contracts, 140, p. 618, n. 6 (3d ed. W. Jaeger 1957): 'There would seem, however, compelling reasons of justice for enforcing promises, where injustice cannot be otherwise avoided, when they have led the promisee to incur any substantial detriment on the faith of them, not only when the promisor intended, but also when he should reasonably have expected such detriment would be incurred, though he did not request it as an exchange for his promise.'
 
 
 [7]
 See, Longo v. Pettsburgh & Lake Erie R.R. Co., 355 F.2d 443 (3d Cir. 1966); Delson v. Minoque, 190 F.Supp. 935 (E.D.N.Y.1961); Skipper v. Marlowe Mfg. Co., 242 S.C. 486, 131 S.E.2d 524 (1963); Safeway Stores v. Wilson, 190 Kan. 7, 372 P.2d 551 (1962); McLaughlin v. Blake, 120 Vt. 174, 136 A.2d 492 (1957); North v. Culmer, 193 So.2d 701 (Fla.App.1967); Kinsey v. Thompson, 44 Ill.App.2d 304, 194 N.E.2d 565 (Ill.App.1963); Rupley v. Huntsman, 159 Cal.App.2d 307, 324 P.2d 19 (1958)
 
 
 [8]
 See, United States for Use and Benefit of Fogle v. Hal B. Hayes & Associates, 221 F.Supp. 260, 263 (N.D.Cal.1963)
 
 
 [9]
 The authority relied upon by the district court, Aetna Life Ins. Co. v. Moyer, 113 F.2d 974 (3 Cir. 1940), is not necessarily inconsistent with our view here. In a more recent case, Longo v. Pittsburgh & Lake Erie R.R. Co., 355 F.2d 443 (3 Cir. 1966), the court of appeals explainted its earlier decision as follows: 'There (in Moyer) we found it a necessary conclusion that in failing to sue the client relied upon the judgment of counsel.' 355 F.2d, at 444, n. 2. In Longo, the court held that, in spite of the fact that plaintiff had employed counsel before the expiration of the limitations period, nevertheless, a fact finder could conclude that plaintiff had relied upon defendant's representations until after the statute had run. Thus we believe that Moyer and Longo together stand for the proposition that employment of an attorney is only one factor to be considered in determining whether a party in fact reasonably relied upon the representations of another
 
 
 [10]
 See, e.g., Northern Metal Co. v. United States, 350 F.2d 833, 839 (3 Cir. 1965); Delson v. Minoque, 190 F.Supp. 935 (E.D.N.Y.1961)