UNITED STATES of America for the Use of J. BOBBY CURRIN & SONS, a North Carolina General Partnership, Plaintiff,

v.

J & W BUILDERS, INC., and Hartford Accident and Indemnity Company, Defendants.

No. Civ. 2:95CV533.

United States District Court,
M.D. North Carolina,
Greensboro Division.

Dec. 13, 1996.

---

§ 270a(a) for the protection of all subcontractors and suppliers on the project. Currin completed work on the Project in March of 1988. Currin is seeking payment for additional work done beyond that required by the terms of the subcontract as a result of later discovered discrepancies in the topographical survey provided to J & W. Hartford has moved for summary judgment arguing that Currin's claim is barred by the one-year statute of limitations under the Miller Act. Currin argues that the doctrine of equitable estoppel precludes Hartford from raising the limitations defense. For the reasons set forth hereafter, the court will grant Defendant's motion for summary judgment and dismiss Plaintiff's complaint with prejudice as untimely filed.

Benjamin Norman Thompson, Wyrick, Robbins, Yates & Ponton, L.L.P., Raleigh, NC, George K. Freeman, Jr., Rountree & Seagle, L.L.P., Wilmington, NC, for U.S. for Use of J. Bobby Currin & Sons.

Clyde Hamilton Jarrett, III, Ellzey & Brooks, LLC, Raleigh, NC, James Lynn Werner, Ellzey & Brooks, LLC, Columbia, SC, for Hartford Acc. and Indem. Co.

## MEMORANDUM OPINION

BULLOCK, Chief Judge.

Before the court is the motion for summary judgment of Defendant,[1] Hartford Accident and Indemnity Company ("Hartford"). Plaintiff, J. Bobby Currin & Sons ("Currin"), brought this action under the Miller Act, 40 U.S.C.A. §§ 270a, 270b (1986 & Supp.1996), seeking to recover $310,834.00 on Hartford's payment bond for subcontract work performed on federal property known as the Seaforth Recreational Facility at Jordan Lake, North Carolina ("the Project"). In March 1987, J & W Builders, Inc. ("J & W") was engaged by the Department of the Army Corps of Engineers to serve as general contractor on the Project at Jordan Lake. Hartford, as surety for J & W, issued a payment bond in accordance with 40 U.S.C.A.

## FACTS

There are no material facts in dispute in this matter. Currin seeks to recover $310,834.00 for clearing, grubbing, and grading work done as part of a subcontract entered into on June 15, 1987, by and between J & W and Currin. Within two weeks of beginning work on the project, it became apparent that there were material errors in the topographical survey which ultimately required correction by the Corps of Engineers. Thereafter, and before the Corps of Engineers issued a contract modification, J & W directed Currin to continue work in accordance with the original plans and specifications.

In October 1987, the Corps of Engineers issued a modification to the original contract which the parties have referred to as "Mod-k." Currin alleges that it has not been paid for extra work performed as a result of the errors in the original plans and specifications. Currin last performed work on the project on March 8, 1988.[2] In April 1988, J & W experienced financial difficulties and voluntarily defaulted on the project. Thereafter, Hartford arranged for a completion contractor, George W. Kane, Inc. ("Kane"), to complete the project. Both parties agree that, under the Miller Act, Currin was re-

---

1. Plaintiff voluntarily dismissed the action against former defendant J & W Builders, Inc., on July 28, 1995.

2. Under the Miller Act, Currin's cause of action expired on March 9, 1989.

quired to bring an action for payment under the bond prior to March 8, 1989. Currin filed its complaint on July 11, 1995. Plainly, this filing was well outside the statute of limitations for an action on a payment bond on a federal project.

In considering Currin's counter-defense of equitable estoppel, the court need address only those facts which arose before March 8, 1989, and which could possibly have induced Currin to miss its filing deadline. *See United States ex rel. Bagnal Builders Supply Co. v. United States Fidelity and Guaranty Co.,* 411 F.Supp. 1333, 1336 n. 3 (D.S.C.1976). The facts reveal that Currin began submitting progress payment claims for the extra work done on the project as early as August 1987; by November 1987, due to the financial difficulties of J & W, Currin negotiated a direct payment from Hartford. By letter dated February 8, 1988, an agent from the bond claim department of Hartford wrote Currin and stated that Currin was "going to be paid for the work . . . accomplished under [Currin's] subcontract," and that Currin would "receive fair treatment."

After the April 1988 voluntary default of J & W, Hartford, as the surety and assignee of all of J & W's rights, claims, and demands related to the Project, became responsible for the contract up until the time that the completion contractor, Kane, was selected on May 5, 1988.

In May of 1988, Currin retained the legal services of E. Cader Howard, Esquire, and William M. Black, Esquire, of Howard, From, Stallings & Hutson, P.A. Thereafter, Currin began negotiations with Hartford for payment of claims against the original subcontract balance and for the extra work it allegedly performed. On September 3, 1988, Hartford issued a check for $40,000.00 to Currin whereupon the check stub described the nature of payment as "on account—pending resolution of modification K Seaforth contract." Although it is not entirely clear from the facts, taking the allegations of Currin as true, the $40,000.00 disbursement was for extra work completed by Currin under Mod–K.

It appears from various correspondences (appearing as exhibits to both parties' briefs) that there was a great deal of confusion surrounding the Seaforth project regarding which entity was ultimately responsible for payment of the subcontractors. It appears from deposition testimony that Currin regarded the government as primarily liable for the extra work accomplished because the government had admitted errors on the original plans and formalized the contract modification in the fall of 1987. The deposition testimony indicates that Currin considered the aforementioned errors in the original plan as a "design bust" which, Currin apparently believed, entitled it to payment under Mod–K directly from the government pursuant to claims for equitable adjustment.

In January 1989, Hartford sent a release to Currin for review regarding a settlement under the original contract between J & W and Currin. Nothing in the record indicates, however, that Currin was aware of the one-year statute of limitations or that Currin had spoken with Hartford about forbearance on a suit under the Miller Act in exchange for continued negotiations towards a settlement with Hartford on the alleged extra work. The statute of limitations expired on March 8, 1989. Thereafter, on April 14, 1989, Hartford settled and paid to Currin the balance on the original subcontract.

Before the running of limitations, and over the course of six years thereafter, Currin sought compensation from the government for the extra work completed under Mod–K through various claims submitted through the general contractor, Kane, in accordance with government contract regulations. In October 1992, the government filed a civil false claims action against Kane, Currin, and other subcontractors on the Seaforth project. Ultimately, the matter was settled and the government paid Currin, through Kane, $30,-000.00 in March 1995. On July 21, 1995, Currin filed the present action.

### DISCUSSION

Section 270b of the Miller Act provides as follows:

Every person who has furnished labor . . . in respect of which a payment bond is furnished under sections 270(a) to 270(b) of

this title and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him ... shall have the right to sue on such payment bond ....

40 U.S.C.A. § 270b(a). The Miller Act further provides that "no suit shall be commenced [under this section] after the expiration of one year after the day on which the last of the labor was performed." 40 U.S.C.A. § 270b(b). Although Plaintiff's complaint was plainly filed outside the applicable statute of limitations, the principles of estoppel against reliance upon the statute of limitations may be applied under some circumstances involving the Miller Act. *See, e.g., United States ex rel. Humble Oil & Refining Co. v. Fidelity and Casualty Co. of New York*, 402 F.2d 893, 897 (4th Cir.1968).

█ In the Fourth Circuit, equitable estoppel is invoked "to aid a party who, in good faith, has relied, to his detriment, upon the representations of another." *Id.* The *Humble Oil* court cited favorably the statement of the rule as set forth by the Tenth Circuit:

'Estoppel arises where one, by his conduct, lulls another into a false security, and into a position he would not take only because of such conduct. Estoppel, in the event of a disputed claim, arises where one party by his words, acts, and conduct led the other to believe that it would acknowledge and pay the claim, if, after investigation, the claim were found to be just, but when, after the time for suit had passed, breaks off negotiations and denies liability and refuses to pay.'

*Id.* (quoting *McWaters & Bartlett v. United States*, 272 F.2d 291, 296 (10th Cir.1959)). "It is not necessary that the representations and conduct should be labeled as fraudulent in a strict legal sense or that they were made or carried on with an intention to mislead the plaintiff." *Id.* at 898. As the *Humble Oil* court pointed out, the focus is not on any particular factor, but rather on the totality of the circumstances. *Id.* Therefore it is not dispositive that the plaintiff may have been represented by counsel before limitations ran, or that no express promise to waive the statute of limitations was made, or that some

form of intentional deception cannot be proven. *Id.* In short, the *Humble Oil* court required nothing more than a showing that "there ha[d] been a representation, reliance, change of position and detriment." *Id.* at 898.

*Humble Oil* involved a supplier who provided asphalt and petroleum products under a subcontract on a highway construction project. *Id.* at 895. Six months after the last delivery made by the plaintiff, the principal (general contractor) failed to make final payment to the supplier. Thereafter, the supplier sought payment directly from the surety. After reviewing the general contractor's financial situation, the surety told the general contractor that all of its outstanding bills, including the one to the plaintiff/asphalt supplier, would be covered by the payment bond if proper invoices were delivered. *Id.* at 896. The general contractor conveyed the substance of this arrangement to the suppliers. *Id.* Thereafter, plaintiff's counsel indicated that his client would prepare the necessary invoices and stated that his client would "withhold action against [the general contractor] for a reasonable time to permit [the surety] to respond." *Id.*

The *Humble Oil* court summarized the facts of the case as follows: there was (1) acknowledgment by the surety of its liability to the subcontractor; (2) an explicit promise by the surety to the principal that the surety would pay all debts owed to the subcontractors; (3) a procedure set up by the surety for the principal to verify subcontractor claims and to submit such claims directly to the surety; (4) participation by the subcontractor in the verification and payment of claims, including lengthy negotiations with the surety before and after the statute of limitations had run; and lastly (5) an explicit promise by the subcontractor to forbear from bringing suit based on the representation that the surety would pay upon submission of proper claims. *Id.* at 896–97. The suit by the subcontractor in *Humble Oil* was brought a little over one year after the statute of limitations had run under the Miller Act.

█ The facts in *Humble Oil* are plainly distinguishable from the facts in the case *sub judice*. It does not appear that the repre-

sentations, if any, made by Hartford rise to the level of those made in *Humble Oil.* Currin cannot point to any express promise made by Hartford to pay on Currin's claims for extra work done under Mod–K. Nor does it appear to the court that any representation was made upon which Currin could reasonably rely that Hartford was waiving the statute of limitations. It appears from the record that all correspondences between the parties were nothing more than those one would expect in a typical commercial context involving a disputed claim and the potential liability of a surety. Nothing in the record indicates that Currin changed position in reliance upon any representation made by Hartford. Unlike the plaintiff in *Humble Oil,* Currin did not expressly state that it would forbear from bringing suit, nor is it clear whether Currin had even contemplated such a suit by March 1989 when the statute of limitations ran out. Moreover, as to Hartford's liability under the payment bond, the parties had entered the final stages of negotiation of a settlement regarding the original contract as evidenced by the delivery of a draft settlement and release agreement in January of 1989 from Hartford to Currin. At all times prior to expiration of the statute of limitations, the record indicates that Currin took the position that the government was primarily liable for the extra work done under Mod–K, and therefore its efforts toward collection were directed at the government. It was not reasonable, therefore, for Currin's counsel to conclude that Hartford had implicitly waived the statute of limitations and that Currin's right to proceed against Hartford had been preserved.

Other cases in the Fourth Circuit are in accord with the court's conclusion in this matter. In *Rothmans Tobacco Co., Ltd. v. Liggett Group, Inc.,* 770 F.2d 1246 (4th Cir. 1985), the defendant purportedly assured the plaintiff that defendant would prevail in satellite litigation involving alleged infringement by defendant of a trademark which defendant had since licensed to plaintiff. The court stated the rule that a defendant could be "estopped from pleading the statute of limitations if he induces the plaintiff to delay filing suit by agreeing that the outcome of the intervening litigation will determine his liability." *Id.* at 1250. In *Rothmans Tobacco,* the court found no evidence of statements or conduct by the defendant that could be taken as an offer to accept delay in a suit by the plaintiff. *Id.* The court maintained that, under North Carolina law, plaintiff was required to prove: (1) that defendant knowingly made a false representation of facts, (2) that plaintiff reasonably relied on the representation, and (3) that plaintiff was "without means of knowing the truth." *Id.* Ultimately, the court found that plaintiff had the means to assess defendant's likelihood of success on the infringement charge, and therefore it was not reasonable for plaintiff to rely on defendant's purported representation. *Id.* (holding that defendant was not estopped from raising the statute of limitations defense). Similarly, in the present case, Currin had the means to independently determine its own likelihood of receiving payment from the government and should have backed up its position by timely filing against Hartford.

In the employment context, the Fourth Circuit stated that equitable estoppel does not apply "unless the [plaintiff's] failure to file in timely fashion is the consequence either of a deliberate design by the [defendant] or of actions that the [defendant] should unmistakably have understood would cause the [plaintiff] to delay filing his charge." *Price v. Litton Business Sys., Inc.,* 694 F.2d 963, 965 (4th Cir.1982). In the present case there is no evidence of deliberate design, nor does the court find that the representations made by Hartford could unmistakably have been understood to cause Currin to defer filing suit. Although not dispositive on the issue, the fact that Currin had counsel prior to expiration of the limitations period is a factor for the court to consider with regard to the element of justifiable reliance. *See Humble Oil,* 402 F.2d at 900 & n. 9. The court finds it unreasonable for Currin to have relied on the representations alleged in this case and to assume that suit could be filed more than six years after expiration of the statute of limitations.

## CONCLUSION

Plaintiff's complaint has been untimely filed. The facts in this case do not call for

application of the doctrine of equitable estoppel. Therefore, Defendant Hartford's motion for summary judgment will be granted and Plaintiff's complaint will be dismissed with prejudice.