The MILLGARD CORPORATION, Plaintiff,

v.

WHITE OAK CORPORATION and National Union Fire Insurance Company of Pittsburgh, PA, Defendants.

No. Civ.A. 3:00CV1685 CFD.

United States District Court, D. Connecticut.

Sept. 30, 2002.

Christopher W. Huck, Michelson, Kane, Royster & Barger, Hartford, CT, for Plaintiff.

Mark Alan Rosenblum, Jonathan M. Starble, Rogin, Nassau, Caplan, Lassman & Hirtle, Hartford, CT, Raymond A. Garcia, Douglas Andrew Frey, Frederick E. Hedberg, Garcia & Milas, New Haven, CT, Gary M. Case, Wolf, Horowitz, Etlinger & Case Etlinger & Ray, Hartford, CT, for Defendants.

### RULING ON PENDING MOTIONS

DRONEY, District Judge.

#### I. *Introduction*

This action arises out of a dispute over payment for subcontracting work that Plaintiff Millgard Corporation ("Millgard") performed at a State of Connecticut Department of Transportation ("DOT") construction project in New Haven, Connecticut. Millgard alleges breach of contract and unjust enrichment against defendant White Oak Corporation ("White Oak"), and seeks to collect payment on a bond against defendant National Union Insurance Company of Pittsburgh, PA ("National Union") pursuant to Conn.Gen.Stat. § 49–42, known as Connecticut's "little Miller Act." Currently pending are National Union's Motion for Summary Judgment [Doc. # 23], National Union's Motion to Strike [Doc. # 28], and Millgard's Motion to Enforce Settlement Agreement [Doc. # 35].[1]

#### II. *Background*[2]

White Oak was the general contractor on a construction project of the DOT to replace a bridge over the Quinnipiac River. On June 6, 1994, National Union issued a payment bond for the project. National Union acted as surety and White Oak was the principal.

On March 22, 1996, Millgard and White Oak entered into an agreement whereby Millgard agreed to act as an excavation subcontractor for White Oak at the project. Millgard began its work on October 31, 1997, but claims that it encountered quartz and granite boulders which constituted conditions differing from those indicated in the subcontract and caused Millgard to incur unanticipated expenditures of time and money. Millgard contends that it informed White Oak of the problem and requested that the subcontract price be increased. White Oak then submitted a claim with the DOT for an increase in the contract price.

Millgard asserts that it met with the DOT and White Oak in September, 1998 and stated that it was entitled to suspend work due to the site conditions it had encountered. For the next several months, White Oak and the DOT engaged in mediation of White Oak's claim with the DOT, and Millgard participated in some of those discussions. Eventually, White Oak terminated Millgard and represents that it did so, in part, because Millgard refused to return to work. The parties also dispute when this termination occurred. Although the parties dispute when Millgard last performed work on the project, Millgard admits it was no later than September 7, 1999.

National Union received written notice of a claim by Millgard on the payment bond on May 10, 2000. National Union advised Millgard that it denied its claim on the bond because it had not been timely presented in accordance with the requirements of Conn.Gen.Stat. § 49–42.

#### III. *Discussion*

##### A. *Payment Bond Statute*

Conn.Gen.Stat. § 49–41 requires that general contractors on public works pro-

---

1. The parties do not dispute that this Court has jurisdiction pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. Count One of the complaint alleges breach of contract against White Oak; Count Two alleges unjust enrichment against White Oak; and Count Three alleges a cause of action on the payment bond against National Union.

2. The recited facts are taken from the parties' Local Rule 9(c) statements and the materials appended thereto, and are undisputed unless otherwise noted.

jects obtain payment bonds to ensure payment to subcontractors and materials suppliers. *See, e.g., Blakeslee Arpaia Chapman, Inc. v. EI Constructors, Inc.,* 239 Conn. 708, 687 A.2d 506 (1997). To bring an action on a payment bond, a claimant must comply with the "little Miller Act," Conn.Gen.Stat. § 49–42, which is "a remedial statute enacted to provide security for workers and materials suppliers unable to avail themselves of the protection of a mechanic's lien." *Okee Indus., Inc. v. National Grange Mut. Ins. Co.,* 225 Conn. 367, 623 A.2d 483, 486 (1993). Section 49–42 provides for a civil remedy for payment bond claims and sets forth requirements for notice to the surety and general contractor and for filing of suit.

At the time the bond in this case was issued, the statute provided, in relevant part,

(a) Every person who has furnished labor or material in the prosecution of the work provided for in such contract in respect of which a payment bond is furnished under the provisions of section 49–41 and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which the claim is made, may enforce his right to payment under the bond by serving a notice of claim within one hundred eighty days after the date on which he performed the last of the labor or furnished the last of the material for which the claim is made, on the sure-

ty that issued the bond and a copy of the notice on the contractor named as principal in the bond.

.       .       .       .       .

(b) Every suit instituted under this section shall be brought in the name of the person suing, in the superior court for the judicial district where the contract was to be performed, irrespective of the amount in controversy in the suit, but no such suit may be commenced after the expiration of one year after the day on which the last of the labor was performed or material was supplied by the claimant.

Conn.Gen.Stat. § 49–42 (1994).[3] This section "operate[s] in general conformity" with the parallel federal statute known as the Miller Act.[4] Federal precedent relating to the Miller Act is relied on by Connecticut state courts in interpreting the 49–42. *American Masons' Supply Co. v. F.W. Brown Co.,* 174 Conn. 219, 384 A.2d 378, 381 (1978). In construing 49–42, Connecticut courts also rely "on the rule of strict construction when the issue was whether the claimant's notice complied with the specific time requirements of the statute ... [but rely] on the rule of liberal construction when the issue [is] the eligibility for statutory coverage of a particular class of subcontractors." *Okee Indus.,* 623 A.2d at 487.

In its motion for summary judgment, National Union argues that there is no genuine issue of material fact that Millgard did not comply with the time deadlines set forth in § 49–42 for providing notice and filing suit against a surety.[5] In

---

**3.** Conn.Gen.Stat. § 49–42 was amended, effective October 1, 1994. The bond was issued on June 6, 1994. There is no dispute that the version of the statute excerpted above, which was in effect at the time the bond was issued, controls.

**4.** The Miller Act is set forth at 40 U.S.C. § 270a *et seq.*

**5.** Millgard argues that the Court should consider National Union's motion as a motion to dismiss, because it concerns subject matter

response, Millgard maintains that National Union's motion for summary judgment should be denied because (1) although Millgard failed to provide written notice of its claim to National Union within the statutory time limit of 180 days, National Union should be equitably estopped from asserting lack of notice as a defense; and (2) the complaint was filed in a timely manner.

### B. *Standard for Summary Judgment*

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A court must grant summary judgment " 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact.' " *Miner v. City of Glens Falls*, 999 F.2d 655, 661 (2d Cir. 1993) (citation omitted). A dispute regarding a material fact is genuine " 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.1992) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505). After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the

burden of proof," then summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The Court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." *Aldrich*, 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991); *see also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir.1992). Additionally "where . . . the non-movant bears the burden of proof at trial, the movant can satisfy its burden of production by pointing out an absence of evidence to support an essential element of the non-movant's case." *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 270 (2d Cir.1999) (citing *Celotex*, 477 U.S. at 323–24, 106 S.Ct. 2548 and *Tops Mkts., Inc. v. Quality Mkts., Inc.*, 142 F.3d 90, 95 (2d Cir.1998)).

### C. *Motion to Strike*

■ As an initial matter, National Union moves to strike two statements in the affidavit of V. Dennis Millgard, the president of Millgard, which was submitted in opposition to the motion for summary judgment. The statements concern National Union's role in assisting White Oak in seeking additional funds from the DOT

---

jurisdiction, rather than for summary judgment. Pl.'s Obj. to Def.'s Mot. for Summ.J. at 7. However, even if the issues here relate to the Court's subject matter jurisdiction, as Millgard contends, summary judgment is an appropriate method for considering subject matter jurisdiction. *See* Wright & Miller, Federal Practice & Procedure: Civil 2d § 2713 at 241 ("the label attached to the motion should not prevent the court from deciding a summary-judgment motion challenging the court's subject-matter jurisdiction

as a suggestion that the court dismiss the action on that ground."). Also, Millgard has presented evidence and other materials responsive to the motion for summary judgment. Although Millgard's objection to the Motion to Strike (which is considered *infra*) refers to Fed.R.Civ.P. 56(f), which permits the court to grant a continuance to respond to a motion for summary judgment, no such request was made in writing or at oral argument.

and, more important to the instant action, National Union's relationship with White Oak at the time White Oak was communicating with Millgard about the project. The two statements by Mr. Millgard are based "[u]pon information and belief." [6] (Millgard Aff. ¶¶ 32, 34.) National Union argues that they fail to meet the personal knowledge requirement of an affidavit when considered in resolving a motion for summary judgment. *See Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir.1988) (concluding that an affidavit based on "information and belief" was insufficient under Rule 56 to support a motion for summary judgment). Millgard does not appear to dispute National Union's argument, but argues that if the Court strikes these statements, it also should strike certain hearsay statements contained in the affidavit of George Rettig, Complex Claims Director of AI Management and Professional Liability Claim Adjusters, which was submitted by White Oak. Millgard does not indicate specifically to which such statements it refers.

The statements of Mr. Millgard will not be considered as they do not indicate that he possessed personal knowledge regarding the matters set forth. *Fed.R.Civ.P.* 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge").

*See also Randell v. United States*, 64 F.3d 101, 109 (2d Cir.1995) (finding "inadequate" statements that "did not purport to be made on personal knowledge …"); *Fed.R.Evid.* 602.[7] To the extent that Millgard requests statements in Mr. Rettig's affidavit be stricken, the request is denied, as Millgard has failed to include the request in a motion filed with this Court and has failed to identify the statements at issue.[8]

**D.** *Notice under § 49–42 and equitable estoppel*

■ National Union received written notice of Millgard's claim on the bond on May 10, 2000. As explained above, Conn. Gen.Stat. § 49–42(a) requires a claimant to notify the surety in writing of a claim on a bond within 180 days of the date it last performed work. Millgard also does not dispute that it filed this notice more than 180 days after September 7, 1999, the date it claims it last performed work. However, Millgard argues that National Union should be equitably estopped from asserting lack of notice as a defense because National Union had actual notice of Millgard's claim and because White Oak, acting in concert with National Union, misled Millgard. In particular, Millgard maintains that White Oak continually assured it

---

**6.** The two statements are as follows:

32. Upon information and belief, the prosecution of this claim [against the DOT] is being funded by and directed by National Union, which has a security interest in the proceeds of the claim.
. . .
34. Upon information and belief, National Union was involved with the project and working with White Oak at the time that White Oak was making these representations [concerning assurances of payment] to Millgard.
Millgard Aff. ¶¶ 32, 34.

**7.** The Federal Rules of Evidence are applicable when deciding a motion for summary

judgment. *Sfasciotti v. Copy–Plus, Inc.*, No. 85–C–6318, 1985 WL 5051, at *1 (N.D.Ill. Dec. 23, 1985) ("The Rules of evidence do not apply to the determination of some preliminary questions of fact (Rule 1101(d)(1)), but they do apply to affidavits submitted to the court on motions to dismiss and for summary judgment.").

**8.** Millgard also states that it could not obtain affidavits from the employees of the defendants. However, depositions could have been utilized to obtain such information. As mentioned in footnote 5, no continuance was requested.

that the disputes over the additional contract payments would be resolved and Millgard should return to work and expect to be paid. Millgard contends that based on these representations it remained on "stand by," prepared to return to work, and that if it had resumed work, National Union would not have been able to assert the statute of limitations defense that it raises here because the time period for providing notice would have been extended.[9]

As an initial matter to consider, the Second Circuit has ruled that a subcontractor cannot assert an estoppel defense to the one-year requirement for filing a complaint under Conn.Gen.Stat. § 49–42(b) because that requirement is jurisdictional. *Fisher Skylights, Inc. v. CFC Constr. Ltd. P'ship*, 79 F.3d 9, 12 (2d Cir.1996). Although this holding has not been specifically extended to the notice requirement of § 49–42(a), courts have concluded that satisfaction of the statutory notice requirement is a precondition to recovery on a bond. *See, e.g., Barreira Landscaping & Masonry v. Frontier Ins. Co.*, 47 Conn.Supp. 99, 779 A.2d 244, 247–48 (2000). Further, courts construe the time requirements of § 49–42 strictly. *Okee Indus.*, 623 A.2d at 487.[10]

The court need not decide whether Connecticut law would apply estoppel to the notice requirement of § 49–42, however, because even assuming that estoppel were available, Millgard has not presented evidence to raise a genuine issue of material fact as to its application here. Under Connecticut law,

> [t]here are two essential elements to an estoppel: the party must do or say something which is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief; and the other party, influenced thereby, must actually change his position or do something to his injury which he otherwise would not have done. Estoppel rests on the misleading conduct of one party to the prejudice of another. In the absence of prejudice, estoppel does not exist.

*W. v. W.*, 256 Conn. 657, 779 A.2d 716, 720 (2001). Similarly, under the Miller Act, a "representation, reliance, change of position and detriment" is required to find estoppel. *Humble Oil & Refining Co. v. Fidelity & Casualty Co. of New York*, 402 F.2d 893, 898 (4th Cir.1968) (hereinafter *"Humble Oil"*). Millgard has not presented any evidence that National Union made any written or oral communications to it or that even if communications by White Oak can be attributed to National Union, that

---

**9.** Millgard also appears to argue that apart from its estoppel argument, National Union received "actual notice" of the claim on the bond. *See* Pl.'s Obj. to Def.'s Mot. for Summ.J. at 17–18. However, Conn.Gen.Stat. § 49–42(a) requires that written notice be sent to the surety within the 180 day notice period and Millgard has not presented any evidence of such written notice prior to May 10, 2000. *See also* footnote 12, *infra*. Although the Connecticut courts have applied a liberal rule of construction as to the contents of written notice under 49–42(a), they still require such notice to be in writing. *See Okee Indus.*, 623 A.2d at 485–89. Because Millgard has not presented any evidence of writ-

ten notice to National Union before May 10, 2000, and appears to rely only on oral and written communications to White Oak before that date, that argument fails.

**10.** The Court notes that "[n]umerous decisions of federal courts of appeals have ... held a timely written notice to be sufficient despite technical deficiencies in its contents if notice in fact was actually given and received." *Okee Indus.*, 225 Conn. at 375–76, 623 A.2d 483. As stated above in text and in footnotes 9 and 12, no written notice was provided to National Union before May 10, 2000.

they affected the 180 day period which began September 7, 1999.

Although some decisions applying the Miller Act have recognized that estoppel may be available, they are unavailing to Millgard. First, those cases generally involve claims by subcontractors that they refrained from filing claims because of certain representations made by sureties. *See, e.g., U.S. for Use of B&B Welding, Inc. v. Reliance Ins. Co. of New York*, 743 F.Supp. 129, 132 (E.D.N.Y.1990); *U.S., for Use and Benefit of J. Bobby Currin & Sons v. J & W Builders, Inc.*, 17 F.Supp.2d 462, 466 (M.D.N.C.1996); *United States of America for the Use and Benefit of Bagnal Builders Supply Co. v. U.S. Fidelity & Guaranty Co.*, 411 F.Supp. 1333, 1337–38 (D.S.C.1976). Here, Millgard claims that White Oak (the contractor rather than the surety) misled it and has not presented any evidence of direct involvement by National Union. At least one case, however, involved representations by a contractor which were attributed to the surety. In *Humble Oil*, the subcontractor claimed that a "copartner" of the contractor made certain statements on which it detrimentally relied in failing to meet the deadline for filing suit. *Humble Oil*, 402 F.2d at 899. There, the court found sufficient evidence to conclude that the copartner was the surety's agent, in part because the copartner was employed by the surety. *Id.* The court further concluded that even if the copartner was not the surety's agent, the surety "should reasonably have anticipated that its promise" to the copartner to pay all of the contractor's outstanding bills, including the debt to the subcontractor "would be repeated" to the subcontractor. *Id.* Here, Millgard has not presented evidence sufficient to raise a genuine issue of material fact that

White Oak was National Union's agent or that White Oak's statements could be attributed to National Union. Although Mr. Millgard, President of the Plaintiff, stated in his affidavit that White Oak assured Millgard it would be paid, no evidence has been presented that National Union made or endorsed such statements, that White Oak represented it was acting on National Union's behalf, or that other evidence of White Oak's agency status with National Union exists.[11] Millgard Aff. ¶ 33.

Further, even if an agency relationship between White Oak and National Union is assumed, Millgard does not claim that White Oak's representations were specifically directed at causing Millgard not to file notice on a timely basis. *See J. Bobby Currin*, 17 F.Supp.2d at 466 (remarking that the subcontractor "did not expressly state that it would forbear from bringing suit, nor is it clear whether [the subcontractor] had even contemplated such a suit [ ] when the statute of limitations ran out"). Rather, it summarizes White Oak's assurances and as follows: "[h]ad Millgard returned to work on the project, National Union could not have asserted the technical defenses that it is now relying on because the statute would be tolled while the work continued." In other words, Millgard appears to claim that the misleading statements by White Oak led it to believe that it would be returning to work once the DOT agreed to the additional payments, thus perhaps extending the starting date for the 180 day notice period, the last day of work on the project by Millgard. However, Millgard does not claim that White Oak made these alleged misrepresentations after September 7, 1999, the date it concedes that it last performed work. Therefore, there is no indication that Millgard changed its position in a

11. Even if Mr. Millgard's statements in his affidavit that were the subject of the Court's decision on the Motion to Strike, *supra*, are considered, they do not affect this result.

manner which caused it prejudice, *see W. v. W.,* 779 A.2d at 720, and its estoppel claim must fail on that basis as well.[12]

### E. *Complaint and Date of Completion*

In its motion for summary judgment, National Union also argues that Millgard failed to file its complaint within the one year time period set forth in § 49–42(b). In light of the Court's conclusion regard the 180 day time requirement for notice, it need not address this argument.

### F. *Motion to Enforce Settlement Agreement*

■ Finally, Millgard has moved to enforce an oral settlement agreement purportedly reached between National Union and Millgard. Millgard claims that the parties reached a settlement of this case, and both parties acknowledge that they jointly notified the Court that the case had been settled. Upon this report, the Court issued a "Notice to Counsel" [Doc. # 33] indicating that under Local Rule 16(b), a case that is reported settled will be dismissed if closing papers are not filed with thirty days. However, based on the parties' representations, the Court concludes that White Oak found the final terms of the proposed settlement to be unacceptable and decided that National Union did not have the authority to negotiate a settlement on its behalf.[13] As a result, National Union refused to participate further in settlement discussions. National Union argues that the Court should not enforce the proposed settlement because no agreement actually was reached.

It is … well established that parties are bound to the terms of a contract even though it is not signed and is an oral agreement. *See Main Line Theatres, Inc. v. Paramount Film Distributing Corp.,* 298 F.2d 801, 802–04 (3d Cir.), cert. denied, 370 U.S. 939, 82 S.Ct. 1585, 8 L.Ed.2d 807 (1962). *See also Schwarzschild v. Martin,* 191 Conn. 316, 320–321, 464 A.2d 774 (1983) (parties may be bound even if contract not signed), cited in *Cyr v. Switzer,* 1998 WL 420778 at *1 (Conn.Super.1998) *Accord Green v. John H. Lewis & Co.,* 436 F.2d 389, 390 (3d Cir.1970) (same), citing *Good v. Pennsylvania R.R. Co.,* 384 F.2d 989 (3d Cir.1967) and other cases collected. The only essential prerequisite for a valid settlement agreement is that the [parties] … mutually assent to the terms and conditions of the settlement. "It is well recognized that an agreement to settle a lawsuit, voluntarily entered into, is binding on the parties." *Pugh v. Super Fresh Food Markets, Inc.* 640 F.Supp. 1306, 1308–08 (E.D.Pa. 1986), cited in *Zauner v. Brewer,* 1992 WL 205179 at *2. (Conn.Super.1992).

Finally, a settlement is still binding even if a party has a change of heart between the time of the agreement to the terms of the settlement and the time those terms are reduced to writing. *Morris v. Scardelletti, et al.,* 1995 WL 708550 at * 1 (E.D.Pa.1995). However, once a settlement is reached, the agreement may not be repudiated by either party. Rather, such an agreement will be summarily enforced by the court.

---

**12.** Millgard has also referred to a copy of a purported notice letter to National Union dated April 7, 2000. *See* Rettig Aff.Ex. 13. National Union contends it did not receive that letter and it does not comply with § 42–42(a). In any event, it is still beyond the 180 day notice period.

**13.** At oral argument, the Court invited the parties to notify it if an evidentiary hearing was requested on this motion, but the Court did not receive such a request.

*Brown v. Nationscredit Commercial,* No. 3:99–CV–592(EBB), 2000 WL 888507, at *2 (D.Conn. June 23, 2000). However, a court only has the authority to summarily enforce a settlement agreement "when the terms of the agreement are clear and unambiguous." *Audubon Parking Assocs. Ltd. P'ship v. Barclay & Stubbs, Inc.,* 225 Conn. 804, 626 A.2d 729, 733 (1993). Further, "if the parties do not intend to enter a binding agreement without a writing, they will not be legally bound until that condition is met." *Consarc Corp. v. Marine Midland Bank,* 996 F.2d 568, 574–76 (2d Cir.1993) (construing New York law).[14]

In this case, Millgard has not shown that all of the parties mutually assented to all of the essential terms and conditions of the settlement and did not intend to be bound by the settlement agreement without a written agreement. For example, while the parties may have reached an agreement on a number of terms in a fairly complex settlement agreement, they apparently did not resolve the significant issue of the $250,000 credit should National Union's security interest be subordinated. Thus, at least one of the important terms of the agreement was neither clear and unambiguous, nor agreed to. In addition, it is common to complete such settlement agreements in writing, particularly under the circumstances of this case, where the parties have a complicated relationship and where substantial financial interests are involved. Finally, Millgard does not point to any evidence indicating that the written agreement was contemplated only as a memorialization of the oral settlement. In fact, although the parties notified the Court that the case had settled, the Court's notice following oral notification expressly contemplates additional steps, including the filing of additional documents. It states that "a judgment will be entered on 11/21/01 unless closing papers are filed on or before that date, or unless counsel reports prior to that date that the case is not in fact settled." (Doc. # 33.)

Accordingly, Millgard's motion to enforce the settlement agreement is denied.

## IV. *Conclusion*

For the foregoing reasons, National Union's motion for summary judgment [Doc. # 23] is GRANTED; National Union's motion to strike [Doc. # 28] is GRANTED; and Millgard's motion to enforce the settlement agreement is DENIED [Doc. # 35]. National Union is dismissed as a defendant and Count Three of the complaint is DISMISSED.[15]

14. In *Consarc,* the Second Circuit enumerated various factors for a court to consider when determining whether a party intended not to be bound until an agreement was reduced to writing. They are as follows: (1) number of terms agreed upon compared to total number to be included, (2) relationship of the parties, (3) degree of formality attending similar contracts, (4) acts of partial performance by one party accepted by the other, (5) usage and custom of the industry, (6) subsequent conduct and interpretation by the parties themselves, (7) whether writing is contemplated merely as a "memorial," (8) whether contract needs a formal writing for its full expression, (9) whether any terms remain to be negotiated, (10) whether contract has few or many details, (11) whether the amount involved is large or small, (12) whether a standard form is widely used in similar transactions or whether this is an unusual type of contract, (13) the speed with which the transaction must be concluded, (14) the simplicity or complexity of the transaction, (15) the availability of information necessary to decide whether to enter into a contract, and (16) the time when the contract was entered into. *Consarc,* 996 F.2d at 575–76.

15. Millgard may move to reopen and to amend its complaint within thirty days, as requested in its Motion to Enforce Settlement

Agreement, to add an additional claim against National Union.   National Union may object to such a request.