## BARREIRA LANDSCAPING AND MASONRY *v.* FRONTIER INSURANCE COMPANY ET AL.[1]

Superior Court      Judicial District of      File No. CV970346908S
Fairfield at Bridgeport

[1] An appeal to the Appellate Court by the named defendant was filed on December 21, 2000; Appellate Court Docket No. AC 21501. On March 26, 2001, the appeal was withdrawn.

Memorandum filed December 6, 2000

*Ury & Moskow*, for the plaintiff.

*Alan Spirer*, for the defendants.

I

## INTRODUCTION

MOTTOLESE, J. In this action by a subcontractor to recover for sums due under two separate municipal construction contracts, the plaintiff, Barreira Landscaping and Masonry, a subcontractor, makes two claims. The first is against the defendant general contractor, Wright Brothers Builders, Inc. (contractor), for breach of contract and unjust enrichment. The second is against the defendant Frontier Insurance Company (surety or defendant surety) under each payment bond issued to support the contract pursuant to General Statutes §§ 49-41a and 49-42, known as the "Little Miller Act."[2]

The dispositive issue in the present case grows out of the proper interpretation of the terms of § 49-42. The plaintiff first alleges that it gave notice of its claim to the contractor and to the surety in accordance with the requirements of § 49-42 (a), which the contractor denies. Second, the plaintiff alleges that the surety did

[2] General Statutes § 49-42 was patterned after federal legislation popularly known as the Miller Act. 40 U.S.C. §§ 270a through 270d.

not give notice of denial of liability or failure to pay any portion of the claim as mandated by the statute.

The facts necessary for a resolution of these issues will be set forth as each issue is discussed.

## II

### NOTICE TO SURETY BY THE PLAINTIFF

On March 4, 1997, within the time specified in § 49-42 (a), the plaintiff gave notice of its claim to the surety by sending individual letters by certified mail, return receipt requested, stating the amount of its claim for the balance due under each of the two contracts, i.e., $14,467.54 for the North Street Elementary School job, and $5761.99 for the Old Greenwich Elementary School job. Neither defendant disputes the legal sufficiency of the contents of these letters. The surety acknowledged receipt of the notices of claim through its letter dated March 27, 1997, but the contractor denies ever having received copies of the notices from the plaintiff.

The letters in question each contain a legend at the bottom which indicates that copies were sent to ten different parties, including the contractor. The plaintiff, however, produced return receipts for certified mailing (green cards) for only four of the ten to whom copies were mailed, not including the contractor. Nevertheless, Jorge Barreira, the plaintiff's principal, testified that he had received signed return receipts from the contractor but mislaid them and has been unable to locate them. The court credits Barreira's testimony not only because it finds it credible, but also because of four additional reasons. First, he produced the other return receipts, which correspond with the names of the persons shown on the "cc" legend on the letter. Second, the contractor's name was listed on the top of the list of ten. Third, he produced each of the two

return receipts from one of the ten, Fletcher Thompson Architects. Fourth, and finally, each of the receipts was dated either March 13 or 14, 1997.

Federal precedents make compliance with the statutory notice requirement of § 49-42 (a) a precondition to the plaintiff's recovery on the surety bond. *American Masons' Supply Co.* v. *F. W. Brown & Co.*, 174 Conn. 219, 224, 384 A.2d 378 (1978). In *Okee Industries, Inc.* v. *National Grain Mutual Ins. Co.*, 225 Conn. 367, 371, 623 A.2d 483 (1993), our Supreme Court hypothesized compliance with the notice requirement had the subcontractor "appended a legend indicating that a copy [of the notice] was being sent to the general contractor, and had then proceeded to forward a copy as indicated." In fact, the subcontractor in that case sent notice to the general contractor by regular mail at a later date in a different letter from that which notified the surety. The court deemed this notice to constitute compliance, though not technically and strictly adhering to the letter of the statute. Id., 376. Likewise, this court holds that the plaintiff in the present case complied with the contractor notice requirement of the statute.

III

NOTICE TO THE PLAINTIFF BY SURETY

As stated previously, the defendant surety does not deny receiving letters from the plaintiff which asserted claims under both the North Street and Old Greenwich contracts. Likewise, there is no dispute that the surety received these letters on March 17, 1997, and sent its notice of denial to the plaintiff on June 26, 1997, clearly more than the ninety days prescribed by the statute. The plaintiff argues that the surety's failure to pay or deny the claim by written notice, as required by the statute, entitles it to judgment. The defendant surety, on the other hand, argues that the ninety days did not

begin to run until the plaintiff completed and filed with that defendant a proof of claim under oath which would then permit it to commence its investigation.

Section 49-42 (a) provides in pertinent part: "The notice of claim shall state with substantial accuracy the amount claimed and the name of the party for whom the work was performed or to whom the materials were supplied, and shall provide a detailed description of the bonded project for which the work or materials were provided. If the content of a notice prepared in accordance with subsection (b) of section 49-41a complies with the requirements of this section, a copy of such notice, served within one hundred eighty days of the payment date provided for in subsection (a) of section 49-41a upon the surety that issued the bond and upon the contractor named as principal in the bond, shall satisfy the notice requirements of this section. *Within ninety days after service of the notice of claim, the surety shall make payment under the bond and satisfy the claim, or any portion of the claim which is not subject to a good faith dispute, and shall serve a notice on the claimant denying liability for any unpaid portion of the claim.* The notices required under this section shall be served by registered or certified mail, postage prepaid in envelopes addressed to any office at which the surety, principal or claimant conducts his business, or in any manner in which civil process may be served. If the surety denies liability on the claim, or any portion thereof, the claimant may bring action upon the payment bond in the Superior Court for such sums and prosecute the action to final execution and judgment." (Emphasis added.)

Once again, relying on federal precedent construing the federal Miller Act, our Supreme Court has adopted a "substantial performance rather than [a] strict compliance [test] when construing statutory notice requirements dealing with the service of notice and with the

contents of notice." *Okee Industries, Inc.* v. *National Grain Mutual Ins. Co.*, supra, 225 Conn 375. An examination of both notices of claim, reveals that they state with substantial accuracy the amount claimed, the name of the party for whom the work was performed and a detailed description of the bonded project. Nothing more is required by the statute. There is no authority in the statute or in the case law for a surety to delay commencement of the ninety day claim assessment period until receipt of a proof of claim under oath, which it has designed for its own administrative purpose.

The next issue is whether the failure of the surety to act upon the plaintiff's notice of claim within the prescribed ninety period is mandatory or directory. The court begins by noting that there is no corresponding provision in the federal Miller Act and so, there is no federal case law to draw upon as an aid in construing the provision. Neither is there any Connecticut precedent to guide the court. Thus, analysis of the provision must be undertaken on the basis of well established principles of statutory construction.

"The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Citation omitted; internal quotation marks omitted.) *Willoughby* v. *New Haven*, 254 Conn. 404, 410, 757 A.2d 1083 (2000). "It is a basic tenet of statutory construction that the

legislature did not intend to enact meaningless provisions . . . . Accordingly, care must be taken to effectuate all provisions of the statute." (Citation omitted; internal quotation marks omitted.) Id., 422. "[I]t is a well established principle that statutes must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant." (Internal quotation marks omitted.) *Bridgeport Hospital* v. *Commission on Human Rights & Opportunities*, 232 Conn. 91, 100–101, 653 A.2d 782 (1995).

In the present case, the plaintiff argues that the word "shall" in the statute governing the time limit set for the surety to make payment or deny a subcontractor's claim is mandatory. The plaintiff further argues that the surety's failure either to pay or deny either claim within that ninety day period gives the plaintiff an automatic right to the amount claimed, whether disputed or undisputed. In response, the surety argues that the legislature did not intend such a draconian result and, therefore, the word "shall" should be interpreted as directory rather than mandatory.

The legislative history reveals that when the statute was amended in 1987, the legislature added, inter alia, a section that allows either party to recover attorney's fees if the court, in its discretion, finds that "either the original claim, the surety's denial of liability, or the defense interposed to the claim is without substantial basis in law or fact." Public Acts 1987, No. 87-345, § 2. The legislative history further reveals that the legislature considered the awarding of attorney's fees as a deterrent to the surety's denial of undisputed claims. 30 H.R. Proc., Pt. 19, 1987 Sess., pp. 7071–72. If a surety fails to pay undisputed claims within ninety days, therefore, the court can award the claimant attorney's fees if the reason for nonpayment has no substantial basis in fact or in law. In the present case, however, the court is satisfied that all of the plaintiff's claims are subject to

a good faith dispute, and, therefore, the surety's defense had a substantial basis in both fact and law. The precise issue, therefore, is what is the consequence for a surety who fails to send the claimant a notice of denial within ninety days when all of the claims are subject to a good faith dispute?

"In order to determine whether a statute's provisions are mandatory [the court] has traditionally looked beyond the use of the word shall and examined the statute's essential purpose. . . . The test to be applied in determining whether a statute is mandatory or directory is whether the prescribed mode of action is the essence of the thing to be accomplished, or in other words, whether it relates to a matter of substance or matter of convenience. . . . If it is a matter of substance, the statutory provision is mandatory. If, however, the legislative provision is designed to secure order, system and dispatch in the proceedings, it is generally held to be directory, especially where the requirement is stated in affirmative terms unaccompanied by negative words. . . . Furthermore, if there is no language that expressly invalidates any action taken after noncompliance with the statutory provisions, the statute should be construed as directory." (Citations omitted; internal quotation marks omitted.) *United Illuminating Co.* v. *New Haven*, 240 Conn. 422, 465–66, 692 A.2d 742 (1997).

The legislative history reveals that, in 1987, the legislature further amended the statute by adding the provision requiring the surety either to pay or deny within ninety days. According to Representative Martin M. Looney, the new procedure "addresses the problem of collecting under a payment bond. . . . This bill authorizes the sub-contractor or a sub-sub contractor who has not been paid within 90 days to collect directly from the company that provided the Contractor's payment bond, going to court only if the bond company fails to satisfy

his claim." 30 H.R. Proc., supra, pp. 7069–70. Further, Senator James H. Maloney commented that "[t]he amendment revises the procedures for claims under materialmen's bonds. What it does . . . in effect [is] require that non-disputed claims be paid, and only the contested portion of the claim would go to litigation. This will simplify the . . . well, first of all, eliminate a number of cases that otherwise might be brought. And will generally improve the orderliness of the materialmen's bonds procedure." 30 S. Proc., Pt. 4, 1987 Sess., p. 1468. The amendment did not provide, nor does the statute in its present configuration provide, an explicit consequence for a surety's failure to admit or deny a claim within the ninety day period. As stated previously, according to principles of statutory construction, if a requirement is stated in affirmative terms, unaccompanied by negative words, and has no words expressly invalidating any action taken after noncompliance, the requirement is usually interpreted as being directory.

On the other hand, " '[t]he use of the word "shall" in conjunction with the word "may" [in other sentences of the same statutory section] confirms that the legislature "acted with complete awareness of their different meanings" . . . and that it intended the terms to have different meanings.' " (Citation omitted.) *Office of Consumer Counsel* v. *Dept. of Public Utility Control*, 252 Conn. 115, 122, 742 A.2d 1257 (2000); see also *Hartford Principals' & Supervisors' Assn.* v. *Shedd*, 202 Conn. 492, 506, 522 A.2d 264 (1987). In the present case, § 49-42 (a) uses the word "may" when referring to a claimant's right to enforce payment on the bond, first by serving notice on the surety and then by filing an action in court, and also uses the word "may" to reflect a court's discretion in awarding attorney's fees. The legislature utilizes the word "shall," however, when referring to the timeliness of procedures and the content of the notices that must be given to each party. Additionally,

while courts have construed other provisions of the act literally to effectuate its purpose, they have strictly construed other time limits contained in the statute. *Blakeslee Arpaia Chapman, Inc.* v. *EI Constructors, Inc.*, 239 Conn. 708, 716, 687 A.2d 506 (1997). Likewise, in *Jones* v. *Civil Service Commission*, 175 Conn. 504, 509, 400 A.2d 721 (1978), the court, strictly on the basis of the juxaposition of "shall" and "may" in a statute, determined that "the words . . . must then be assumed to have been used with discrimination and a full awareness of the difference in their ordinary meanings." Referring specifically to § 49-42 (a), it is noted that the legislature employed the word "may" in two distinct places, both creating an option for enforcement action by the subcontractor/claimant. On the other hand, the legislature used the word "shall" in four places when requiring either the claimant or the surety to perform an act. Thus, it is apparent that the legislature intended to assign different meanings to the two words.

In *Zoning Board of Appeals* v. *Freedom of Information Commission*, 198 Conn. 498, 505, 503 A.2d 1161 (1986), the court held time requirements set forth in the freedom of information statute to be mandatory because "[t]he speedy disposition of complaints is important both to the complainant and to the efficient functioning of the governmental agency involved." In *Hartford Principals' & Supervisors' Assn.* v. *Shedd*, supra, 202 Conn. 507, the court held that the time frames set forth in General Statutes § 10-153f for the resolution of labor disputes are mandatory because "time . . . went to the essence of [the statute's] purpose," which was to have labor contracts finalized within a municipality's budget cycle.

Similarly, this court finds that the history of both the federal and the Connecticut Miller Acts makes it clear that the abiding purpose of the legislation is to facilitate the speedy disposition of subcontractor claims when engaged in municipal construction projects.

Further support for the argument that the ninety day limit is mandatory is found in the decisions in which our courts have ruled that the amendment containing this provision should not be applied retroactively. See *Blakeslee Arpaia Chapman, Inc.* v. *EI Constructors Co.*, supra, 239 Conn. 735–36; *American Masons' Supply Co.* v. *F. W. Brown Co.*, supra, 174 Conn. 219; see also *Grinnell Fire Protection Systems Co.* v. *Hartford Fire Ins. Co.*, Superior Court, judicial district of Danbury, Docket No. 322081 (November 1, 1996) (*Moraghan, J.*); *B. W. Dexter II, Inc.* v. *A. Prete & Son Construction Co.*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 960557033S (August 23, 1996) (17 Conn. L. Rptr. 464) (*Aurigemma, J.*); *Balf Co.* v. *Spera Construction Co.*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 880348120 (December 11, 1991) (7 C.S.C.R. 68) (*Wagner, J.*).

The general rule regarding retroactivity is found in General Statutes § 55-3 which provides: "No provision of the general statutes, not previously contained in the statutes of the state, which imposes any new obligation on any person or corporation, shall be construed to have a retrospective effect." "The obligations referred to in [§ 55-3] are those of substantive law. . . . Thus, we have uniformly interpreted § 55-3 as a rule of presumed legislative intent that statutes affecting substantive rights shall apply prospectively only. . . . This presumption in favor of prospective applicability, however, may be rebutted when the legislature clearly and unequivocally expresses its intent that the legislation shall apply retrospectively." (Internal quotation marks omitted.) *Oxford Tire Supply, Inc.* v. *Commissioner of Revenue Services*, 253 Conn. 683, 692, 755 A.2d 850 (2000).

Connecticut courts have refused to apply amendments to § 49-42 retroactively. Thus, these judicial

determinations that the 1997 amendment to § 49-42 should apply prospectively and not retrospectively support the argument that the rights affected thereby are substantive rather than procedural. This view would lead ineluctably to the conclusion that the surety's duty to respond to a claim in the prescribed manner within ninety days is mandatory rather than directory.

In a slight variation of the issues, other decisions of this court have found that a surety's failure to respond to a claim within ninety days can be the basis for a claimant's cause of action for a violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. *Production Equipment Co.* v. *Blakeslee Arpaia Chapman, Inc.*, Superior Court, judicial district of New Haven at Meriden, Docket No. CV940247485S (January 3, 1996) (15 Conn. L. Rptr. 558, 559) (*Silbert, J.*); *Premier Roofing Co.* v. *Ins. Co. of North America*, Superior Court, judicial district of Danbury, Docket No. 312438 (March 3, 1995) (13 Conn. L. Rptr. 544, 547) (*Leheny, J.*); *Blakeslee Arpaia Chapman, Inc.* v. *United States Fidelity & Guaranty Co.*, Superior Court, judicial district of New London, Docket No. 520348 (March 4, 1994) (11 Conn. L. Rptr. 169, 175) (*Hurley, J.*). This discreet body of law constitutes further support for the status of this ninety day requirement as substantive and, therefore, mandatory.

Having held the ninety day pay or deny provision to be mandatory and not directory, the court must now determine whether the surety's failure to adhere to the requirement results in automatic approval of payment to the plaintiff.

The result that has uniformly emanated from our case law when a mandatory statutory time limit has been violated in the context of administrative law, has been to invalidate the action of the particular agency that

committed the violation. *Hartford Principals' & Supervisors' Assn.* v. *Shedd,* supra, 202 Conn. 505; *Zoning Board of Appeals* v. *Freedom of Information Commission,* supra, 198 Conn. 505. Thus, if the action of an administrative agency in denying an application for a specified form of relief is null and void because of failure to comply with a mandatory time limit, the legal effect is that the relief requested is granted. Whether an agency's action is held illegal on the merits or because it failed to act in accordance with the statutory time limits is immaterial. The result is the same, viz., the person seeking the relief is awarded the relief. So too with § 49-42; it does not matter whether the surety's denial of the plaintiff's claim was in bad faith or without substantial basis in law or in fact. The surety's failure to act within the prescribed ninety day period was equally illegal and the plaintiff is entitled to the relief sought in its notice of claim. The surety's denial of June 26, 1997, therefore, was null and void.

Except for the defense of the statute of limitations, the court's disposition of the plaintiff's claims has preclusive effect on the defendant surety's special defenses and counterclaim and obviates the need for any further adjudication, save for the plaintiff's request for attorney's fees and the statutory mandate for interest under § 49-42 (a). With respect to the defendants' first special defense of the statute of limitations, the court finds that the defendants have failed to sustain their burden of proof.

Attorney's fees are awardable under the statute only if the denial of liability or the defenses interposed were "without substantial basis in fact or law." In view of the novelty of the issues involved and the good faith nature of the defenses, the court cannot say that the plaintiff has met the statutory threshold of "without substantial basis." The request for attorney's fees, therefore, is denied.

Section 49-42 (a) provides that: "In any such proceeding, the court judgment shall . . . allow interest at the rate of interest specified in the . . . contract under which the claim arises or, if no such interest rate is specified, at the rate of interest as provided in [General Statutes] § 37-3a upon the amount recovered, computed from the date of service of the notice of claim . . . ." The notice of claim in the present case was served on March 17, 1997.

## IV

## CONCLUSION

Judgment may enter on counts three and four of the plaintiff's amended complaint as against the defendant surety, Frontier Insurance Company, as follows.

Interest is calculated in this manner:

$14,467.54 - North Street contract
$ 5,761.99 - Old Greenwich contract
$20,229.53 x .10 ÷ 365 = $5.619 per day = $2,022.95 per year

From March 17, 1997 to March 17, 2000 - $2,022.95 x 3 = $6,068.85

From March 17, 2000 to December 1, 2000 - 259 days x $5.619 =
$1,455.32
+$6,068.45
=$7,524.17 Total Interest
+$20,229.53 Total Principal
=$27,753.70 Total Judgment

Interest of $5.619 per day is to be awarded until the date of payment.