[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Trial of this matter was held before this court on June 19, 2002 and June 26, 2002, respectively. The plaintiff, Connecticut Electric Equipment Company, Inc., (CEEC) filed a five count substituted complaint on March 12, 2001 against the defendants, The Butler Group, Inc. (Butler) (general contractor), Green Mountain Enterprises, Inc. (Green Mountain) (subcontractor), and Fidelity and Guaranty Insurance Company (Fidelity) (surety).[1] The first count of the complaint alleges a cause of action for quantum merit against Butler and Green Mountain. The second count of the complaint directed towards Butler and Fidelity raises a claim to enforce the payment bond issued by Fidelity to Butler pursuant to General Statutes §§ 49-41 and 49-42. The third count of the complaint alleges a violation of the Connecticut Unfair Trade Practices Act (CUTPA) against Butler and Fidelity. In the fourth count of the complaint, CEEC seeks damages pursuant to an alleged violation of General Statutes § 49-41a
(b) against Butler. The fifth count of the complaint alleges a breach of contract against Green Mountain.
The following facts are found by the court. Butler entered into a contract with the Town of Plainville for the construction of an addition to be affixed to the Plainville Senior Center. Butler entered into a contract with Green Mountain to provide electrical work, including labor and materials, for the Plainville Senior Center project. (Exhibit 1.) Subsequently, Green Mountain entered into an agreement with CEEC to supply electrical materials for the Plainville Senior Center project and executed a joint payment agreement whereby Butler agreed to pay for the electrical materials by issuing joint checks to Green Mountain and CEEC. (Exhibit A.) CEEC supplied both electrical materials and services from November 1, 1999 though January 28, 2000 to Green Mountain for the Plainville Senior Center project but Green Mountain has failed to pay and maintains an outstanding balance of $18,962.28. (Exhibits B, I and J.)
Fidelity issued a payment bond, pursuant to § 49-41, in the amount of $303,000 to Butler.[2] (Exhibit C.) On May 18, 2000, CEEC served a CT Page 13634 timely notice of claim to the surety, Fidelity, and sent a copy of its notice of claim to the general contractor, Butler, pursuant to §49-42.[3] (Exhibit D.) On June 16, 2000, and June 29, 2000, respectively, Butler and Fidelity responded to CEEC in writing acknowledging both receipt of its notice of claim and the specific project on which a balance was owed. (Exhibits B and F.) Fidelity failed to make payment on the bond to CEEC pursuant to § 49-91. Accordingly, CEEC brought this action against Butler. Fidelity and Green Mountain on November 28, 2000.
CEEC commenced this action against Butler, Fidelity and Green Mountain on November 28, 2000. On February 1. 2001, CEEC moved for summary judgment that was denied by Judge Levine on February 16, 2001. On February 7, 2001, CEEC filed a motion to cite in a party defendant, accompanied by a substituted complaint that was granted by Judge Levine. On March 12, 2001, CEEC filed a third substituted complaint. On November 15, 2001, Fidelity moved to dismiss this action that was denied by Judge Skolnick on March 25. 2002. See Connecticut Electric Equipment Co. v.Fidelity Guaranty Ins. Co., Superior Court, judicial district of Meriden, Docket No. CV00 0274893 (March 25, 2002, Skoinick, J.) (31 Conn.L.Rptr. 693). Trial was held before this court on June 19, 2002 and June 26, 2002. The court heard testimony on behalf of CEEC from Sam Bradford, the president of CEEC, and Timothy Sullivan, a sales manager for CEEC. Testifying on behalf of the defendants were Beverly Simonet, a Butler employee, and Jack O'Konis, the electrical contractor hired by Butler to complete the electrical work on the Plainville Senior Center project. CEEC introduced the following exhibits that were admitted as full exhibits by this court: A copy of the joint payment agreement signed by the representatives for CEEC, Butler and Green Mountain. (Exhibit A); A detailed statement of CEEC's invoices billed for the Plainville Senior Center project.[4] (Exhibit B); A copy of the payment bond identifying Butler as the general contractor and Fidelity as the surety in the amount of $303,000. (Exhibit C); A copy of CEEC's notice of claim to Fidelity, dated May 18, 2000. (Exhibit D); Letters sent to CEEC from both Butler and Fidelity acknowledging receipt of CEEC's notice of claim against the payment bond, dated June 16, 2000 and June 29, 2000, respectively. (Exhibits E and F); Two Secretary of State printouts identifying the corporate structures of Green Mountain and Triple L Electric Company.[5]
(Exhibits G and H); CEEC's invoices for electrical materials it supplied to the Plainville Senior Center project. (Exhibits I and J.)
The defendants introduced the following exhibits that were made full exhibits by the court: A copy of the contract entered into by Butler and Green Mountain. (Exhibit 1); A check issued by Butler to E. J. Lavallee [Earl Lavallee] in the amount of $3000, dated November 5, 1999. (Exhibit CT Page 13635 2); Two checks, the first issued by Butler to Green Mountain in the amount of $3,123.72 and the second check issued to Green Mountain and CEEC in the amount of $8,876.28, both dated November 19, 1999. (Exhibits 3a and 3b); A check issued by Butler to Green Mountain in the amount of $6000, dated December 30, 1999. (Exhibit 4); A copy of the IRS levy issued against Triple L that was sent to Butler, dated July 20, 1999 and a check issued by Butler to the IRS in the amount of $9,818.46, dated January 19, 2000. (Exhibits 5 and 6); A copy of an invoice issued by O'Konis Electric, LLC, the contractor hired by Butler to finish the Plainville Senior Center project and a photocopy of a check issued by Butler to O'Konis Electric in the amount of $21,417.25, dated May 4, 2000. (Exhibits 7 and 8); A piece of manilla paper listing the check amounts issued by Butler. (Exhibit 9); A lien waiver issued by Butler that was executed by Green Mountain, dated December 30, 1999. (Exhibit 10.)
 I.
CEEC brought this action pursuant to §§ 49-41 and 49-42.[6]
Section 49-41 provides that a contractor must obtain a payment bond on a public works project when it exceeds $50,000. Section 49-42 provides that a person may enforce his right to payment pursuant to the bond by serving a notice of claim within one hundred and eighty days if he provided materials or services for the benefit of a public works project and was not paid within sixty days from the last date that the materials or services were supplied. CEEC alleges that it was in a direct contractual relationship with the subcontractor, Green Mountain, therefore, its status was that of a second tier subcontractor to the general contractor, Butler, on the Plainville Senior Center. CEEC alleges that it supplied materials and services to the Plainville Senior Center and subsequently was not paid by either Butler or Green Mountain. CEEC alleges that more than sixty days has passed since the date it provided materials and services and that it is owed an outstanding balance of $18,962.28 for materials and services it provided to the Plainville Senior Center project. CEEC alleges that it served a notice of claim on the payment bond pursuant to § 49-42 on both the surety, Fidelity, and the general contractor, Butler, in order to enforce its right to payment under the bond pursuant to § 49-41. CEEC seeks damages in the amount of $18,858.01, plus interest and attorney's fees in the amount of $8300.[7] (Plaintiff's Post-Trial Brief, pp., 23 27.) CEEC argues that it is entitled to attorney's fees based on the defendants' "failure to act and lack of a substantive defense mak[ing] their complete denial of liability `. . . without substantial basis in fact or law.'"[8]
(Plaintiff's Post-Trial Brief, p., 25.) CT Page 13636
The defendants argue that CEEC was in a direct contractual relationship with another entity, Triple L, and bases this argument on the CEEC's invoices that bill Triple L and not Green Mountain for the materials it supplied to the Plainville Senior Center. (Exhibit B.) The defendants strongly contend that CEEC did not supply materials to Green Mountain for the benefit of the Plainville Senior Center. The defendants further argue that Butler was in a direct contractual relationship with Green Mountain and not in a direct contractual relationship with Triple L in regards to the Plainville Senior Center project. The defendants, therefore, conclude that based on CEEC's invoices it was in a direct contractual relationship with Triple L, who was not involved in the Plainville Senior Center project. Accordingly, the defendants argue that CEEC is not a second tier subcontractor on the Plainville Senior Center project and is therefore not protected under the payment bond.
CEEC argues that it referenced the wrong company on its billing invoices due to a clerical mistake. CEEC further argues that Triple L and Green Mountain are the same company run by the same principals and located at the same address. CEEC contends that Triple L changed its name to Green Mountain when it experienced tax difficulties with the IRS and as such CEEC failed to update its own billing records. (Plaintiff's Post-Trial Brief, p., 6.) CEEC concludes that it shipped materials for Green Mountain to the Plainville Senior Center.
The defendants argue that Triple L and Green Mountain are separate entities. Triple L is a Connecticut Corporation while Green Mountain is a Limited Liability Corporation. (Exhibits G and H.) The defendants further argue that Triple L is not a party to this action nor was it involved in the construction of the addition to the Plainville Senior Center. The defendants claim that CEEC did not supply materials or send invoices to Green Mountain concerning the Plainville Senior Center project. Additionally, the defendants argue that CEEC supplied materials to Triple L, who was not a subcontractor on the Plainville Senior Center project and, therefore, it is not responsible to pay for those electrical materials. Accordingly. the defendants argue that they should not be held accountable under the payment bond for materials furnished to Triple L.
At trial, CEEC introduced invoices billed to Triple L for the Plainville Senior Center project. The defendants objected to the relevance of these invoices and argued that the invoices referenced materials supplied to Triple L and not Green Mountain, the subcontractor to the Plainville Senior Center project. Sam Bradford, a witness for CEEC, testified that the company experienced a clerical error with its computer records and failed to update the name change of Triple L to Green Mountain. (Transcript, pp., 9-10.) Tim Sullivan, a witness for CT Page 13637 CEEC. testified that Triple L and Green Mountain were operated by the same person, Earl Lavallee and out of the same office, the second floor of a two family house located at 90 Pleasant Avenue, Bristol, Connecticut. (Transcript, pp,. 33-34.) CEEC introduced a joint payment agreement executed by itself, Butler and Green Mountain in order to prove that it only dealt with Butler and Green Mountain during the construction of the Plainville Senior Center project. (Exhibit A.) CEEC submitted Butler's response letter acknowledging receipt of the its claim on the payment bond in which Butler stated "Enclosed please find information regarding your claim for Triple L/Green Mountain Electric on the above named project, [Plainville Senior Center] commencing on 10/30/99 to present" in order to support its argument that Butler identified Triple L as Green Mountain. (Transcript, p., 46, and Exhibit E.) Accordingly, the court admitted CEEC's invoices as a full exhibit based on the following reason: "that the invoice referred to in Plaintiff's Exhibit `E', which is an acknowledgment by Butler with respect to the Plainville Senior Center, and an answer to a certified letter dated 5/18, regarding one of the subcontractor['s] certified letter, furnished by [CEEC] treats Triple L and Green Mountain as one in the same. And the [c]ourt is further satisfied that the statement that Plaintiff's exhibit `B' constitutes, of supplies furnished by [CEEC], were furnished to the Plainville Senior Center, as indicated on the face of said exhibit." (Transcript, pp., 58-59.)
Sullivan testified that according to CEEC's invoices a majority of the materials were directly shipped to the Plainville Senior Center. Sullivan further testified that Green Mountain took delivery of about $500 worth in electrical materials labeled Will Call or Pick Up. (Transcript., p., 81 and Exhibit J.) CEEC argues that the Ship Tickets and Shipping Manifests prove that delivery of the electrical materials were made directly to the Plainville Senior Center. The defendants argue that "[a]ll the materials that form the basis of the Plaintiff's Complaint were shipped to Triple L Electric." (Defendants' Post-Trial Brief, p., 9.)
Simonet, a witness for the defendants, is an employee of Butler and was the representative who signed the joint payment agreement. (Exhibit A.) Simonet testified that Butler executed a joint check in the names of Green Mountain and CEEC in the amount of $8,876.28 on November 19, 1999. (Transcript., p., 104.) Simonet further testified that CEEC signed the check back over to Green Mountain in the amount of $4,869.99 that was due to it for materials it had supplied to the Plainville Senior Center. Sullivan testified that CEEC did endorse the joint check back over to Green Mountain for the following two reasons. First, allegedly Lavallee needed the money in order to make payroll for Green Mountain. Second, CT Page 13638 that the invoices were not due at the time the check was issued. (Transcript, p., 76.)
During trial, it appeared that the defendants' witness, Simonet, experienced difficulty in differentiating between Triple L and Green Mountain. When Simonet was asked if she ever questioned CEEC's invoices for the Plainville Senior Center project that billed Triple L and not Green Mountain she replied "No, because it was Earl [Lavalle]." (Transcript., p., 130.) Simonet was asked who she dealt with at Green Mountain during the Plainville Senior Center project and she testified that she dealt with Earl Lavalle and his secretary, Jennifer. (Transcript, p., 99.) Furthermore, Simonet was asked if Butler had any jobs with Triple L at the time she received the IRS levy. She testified "Yes, the senior center was in progress." (Transcript, p., 109.) Simonet had previously testified that Butler had only contracted with Green Mountain for the construction of the Plainville Senior Center. Finally, Simonet testified that she received a notice of levy from the IRS regarding Triple L's tax situation. (Exhibit 5.) Simonet issued a check to the IRS in the amount of $9,818.46. (Exhibit 6.) On the face of the check, in the memo section, it states Triple L Electric and Plainville Senior Center. However, the defendants argue that Butler never entered into an agreement with Triple L regarding the construction of the Plainville Senior Center Project. (Defendants' Post-Trial Brief, p., 2, ¶¶ 6 and 15.)
"[A] payment bond required by [General Statutes] § 49-41 is intended to protect workers and materials suppliers on public works projects who cannot avail themselves of otherwise available remedies such as mechanic's liens. . . . Section 49-42 provides that such workers and suppliers may bring suit under the payment bond if full payment is not received. . . . The right of action under a payment bond is statutorily limited under § 49-42 (a) to those having a direct contractualrelationship with a project contractor or subcontractor in order to prevent the imposition of unlimited liability upon the prime contractor and his surety." (Citations omitted; emphasis added; internal quotation marks omitted.) Dysart Corp. v. Seaboard Surety Co., 240 Conn. 10,18-19, 688 A.2d 306 (1997). "Section 49-41 requires that the general contractor provide a payment bond with surety to the state or governmental subdivision, which bond shall guarantee payment to those who supply labor and materials on a public works project. . . . Section 49-42
provides that any person who has performed work or supplied materials on a public works project, but who has not received full payment for such materials or work, may enforce his right to payment under the payment bond. This legislation, known as the `Little Miller Act' . . ., was patterned after federal legislation popularly known as the Miller Act; CT Page 13639 40 U.S.C. § 270a through 270d; and, therefore, we have regularly consulted federal precedents to determine the proper scope of our statute. . . . The federal precedents, like our own, counsel liberal construction of statutory requirements other than those relating to specific time constraints. . . . As the United States Supreme Court has stated, the federal Miller Act is highly remedial in nature . . . [and] entitled to a liberal construction and application in order properly to effectuate the [legislative] intent to protect those whose labor and materials go into public projects." (Brackets in original citations omitted; internal quotation marks omitted.) Blakeslee Arpaia Chapman,Inc. v. El Constructors, Inc., 239 Conn. 708, 715-16, 687 A.2d 506
(1997).
The court concludes that evidence presented establishes that CEEC was not paid for electrical materials it provided to Green Mountain that were shipped to the Plainville Senior Center project. The court finds that CEEC mistakenly billed Triple L instead of Green Mountain for the electrical materials and services it provided to the Plainville Senior Center project due to a clerical error. The court, therefore, concludes that CEEC was in a direct contractual relationship with Green Mountain, the subcontractor to the Plainville Senior Center Project. The court finds in favor of CEEC as to count two of its complaint and concludes that CEEC is entitled to recover under the payment bond pursuant to § 49-42. Accordingly, judgment will enter in favor of CEEC in the amount of $14,092.29, plus interest at the rate of ten percent a year, pursuant to § 37-3a, computed from the date of service of the notice of claim, May 18, 2000, to the date of judgment, and costs for bringing this action pursuant to § 49-42a.[9]
"Attorney's fees are award awardable under the statute only if the denial of liability or the defenses interposed were without substantial basis in fact or law." (Internal quotation marks omitted.) BarreiraLandscaping Masonry v. Frontier Ins. Co., 47 Conn. Sup. 99, 111,779 A.2d 244 (2000). Accordingly, the court has considered but has ultimately concluded that an award of attorney's fees, pursuant to §49-42, is unwarranted because the court cannot conclude upon reviewing the entire record that the defendants "denial of liability, or the defense interposed to the claim is without substantial basis in fact or law." General Statutes § 49-42a.
 II.
CEEC alleges in the first count of its complaint a cause of action for quantum meruit against Butler and Green Mountain.[10] "The lack of a remedy under a contract is a precondition to recovery based on unjust CT Page 13640 enrichment or quantum meruit. It would be contrary to equity and fairness to allow a defendant to retain a benefit at the expense of the plaintiff." United Coastal Industries, Inc. v. Clearheart ConstructionCo., 71 Conn. App. 506, 513, ___ A.2d ___ (2002). The court has already awarded CEEC damages, pursuant to § 49-42, the further award of damages under quantum meruit is not appropriate. Accordingly, the court dismisses count one of the complaint as to Butler.
 III.
CEEC alleges in the third count of its complaint that Butler and Fidelity violated the Connecticut Unfair Trade Practices Act (CUTPA). CEEC alleges that Fidelity engaged in the following deceptive and/or unfair practices: First, Fidelity failed to provide any reasoning on why it did not make payment to satisfy CEEC's claim pursuant to § 49-41. Second, Fidelity is not authorized to do business in Connecticut pursuant to General Statutes § 33-922. Third. Fidelity has not filed a trade name certificate pursuant to General Statutes § 35-1. Fourth, that the § 49-41 payment bond does not conform to Connecticut law because the bond requires a ninety-day waiting period before a claim can be made against the bond whereas § 49-42 requires a sixty-day period. Fifth, the payment bond requires that CEEC give notice to the general contractor and the owner, whereas, pursuant to § 49-42, CEEC must provide notice to the principal and the surety. Finally, the payment bond does not conform to Connecticut law because it requires that since CEEC did receive a response then it must give notice to the surety within thirty days from the original notice whereas, pursuant to § 49-42, CEEC has one hundred and eighty days to serve notice to both the surety and the principal. CEEC concludes that for the above mentioned reasons Fidelity failed to act in good faith.
CEEC alleges that Butler has engaged in the following unfair and/or deceptive practices. First, Butler failed to pay its claim. Second. Butler failed to place money into an interest bearing account in the amount that CEEC was seeking pursuant to § 49-41a (b). CEEC argues that Butler does not have a good faith defense, failed to notify CEEC in writing the reasons for which it refused to pay the claim and stating why it refused to place funds in an escrow account in violation of 49-41a
(b). CEEC further argues that Butler engaged in stonewalling when it argued that Triple L was the responsible party and not Green Mountain and that this constituted a deceptive act. CEEC contends that Butler failed to notify CEEC in writing, stating pursuant to General Statutes §49-41c, its reasons for withholding payment of the claim and failed to provide a copy of written notice to the owner. CEEC argues that Butler's failure to conform with Connecticut law and refusal to pay CEEC's claim CT Page 13641 constitutes an unfair practice. CEEC contends that it has suffered an ascertainable loss due to the defendants' actions. Finally, CEEC argues that the defendants failed to act in good faith, therefore, it was forced to bring suit in order to seek the recovery of damages, punitive damages and attorney's fees.
The defendants argue that CEEC failed to produce any evidence at trial that Fidelity is not authorized to do business in Connecticut or that it failed to file a trade name certificate. (Defendants' Post-Trial Brief, p., 10.) Accordingly, the defendants argue that CEEC cannot recover attorney's fees from Fidelity pursuant to General Statutes § 42-110g. The defendants do not address CEEC's allegations directed against Butler in their post-trial brief.
The court agrees that CEEC did not introduce any evidence to the court at trial substantiating its argument that Fidelity is not authorized to conduct business in Connecticut or that it failed to file a trade name certificate with the town of Plainville.
"[A]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action. . . to recover actual damages." General Statutes § 42-110g (a). "CUTPA provides that `[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.' General Statutes § 42-110b (a). In order to enforce this prohibition, CUTPA provides a private cause of action to [a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a [prohibited] method, act or practice. . . . General Statutes § 42-110g (a)." (Brackets in original; internal quotation marks omitted.) Abrahams v. Young Rubicam, Inc., 240 Conn. 300, 306, 692 A.2d 709 (1997).
"It is well settled that in determining whether [an act or] practice violates CUTPA we have adopted the criteria set out in the cigarette rule by the federal trade commission for determining when [an act or] practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness: (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [competitors or other businessmen]. . . . All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it CT Page 13642 meets one of the criteria or because to a lesser extent it meets all three. . . . Thus a violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy." (Brackets in original; internal quotation marks omitted.) Saturn Construction Co. v. Premier Roofing Co.,238 Conn. 293, 310-11, 680 A.2d 1274 (1996). "[A] violation of § 49-41
may be the basis for a CUTPA claim." DSM, Inc. v. Sentry Select Ins.Co., Superior Court, judicial district of Litchfield, Docket No. CV 01 085405 (March 22. 2002, DiPentima, J).
The court concludes that there is insufficient evidence to support a finding by the court that the defendants, Fidelity and Butler, engaged in "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." General Statutes § 42-110b
(a). Accordingly, the court dismisses count three of the complaint as to both Butler and Fidelity.
 IV.
CEEC seeks damages in the amount of $18,962.28, attorney's fees and prejudgment interest pursuant to § 49-42 and costs pursuant to §49-41a (b) from Butler.[11] CEEC alleges that there is an outstanding balance due for the amount of $18,962.28 for the materials it supplied to the Plainville Senior Center. CEEC alleges that it provided notice to Butler pursuant to § 49-41a (b) and demanded that Butler either pay its claim or establish an escrow account fund in the amount of its claim plus interest of one percent a month. CEEC alleges that Butler failed to do this in violation of § 49-41a (b), therefore, CEEC seeks damages, attorney's fees, and prejudgment interest pursuant to § 37-3a and § 49-41a (b).
Butler argues that the only notice that CEEC issued was a § 49-42
notice. Accordingly, Butler argues that the notice requirements for § 49-41a (b) are different than § 49-42 and, therefore, CEEC's notice cannot be used to satisfy § 49-41a (b). Butler argues that CEEC presented no evidence at trial that it sent written notice to the subcontractor, Green Mountain, or that it had made a written demand that the amount of its claim be placed in an escrow account from either Butler or Green Mountain.
CEEC argues that notice provided pursuant to § 49-42 is sufficient to satisfy the notice requirements under § 49-41a (b). CEEC cites toSaturn Construction Co. v. Premier Roofing Co., supra, 238 Conn. 306, n. 11, in support of this argument. CEEC argues that it notified Butler of its claim by certified mail and that Butler admitted in its Responses to CT Page 13643 Plaintiff's Admissions that it did not place any funds in an escrow account.
"[T]he parameters of the notice requirements of § 49-41a have never been addressed by this court or the Appellate Court." Saturn ConstructionCo. v. Premier Roofing Co., supra, 238 Conn. 307. However, our Supreme Court in Saturn did not conclude "that a subcontractor could not satisfy the notice requirements of both statutes [General Statutes §§49-41 and 49-42] in the same letter." Id., 306, n. 11. "[General Statutes §§] 49-41a (b) and 49-42 are not interrelated but rather, are separate and distinct statutes designed by the legislature to accomplish separate and distinct ends and to afford separate and distinct remedies to subcontractors. They are not . . . interrelated so that compliance with the notice provision of 49-41a (b) is a jurisdictional prerequisite for a subcontractor to commence suit on a payment bond under 49-42."Nor'easter Group, Inc. v. Colossale Concrete, Inc., 207 Conn. 468, 477,542 A.2d 692 (1988). "[I]t is clear from its plain language and its legislative history that the purpose of 49-41a (b) is to penalize a general contractor on a public works project, who, without cause, withholds payment from a subcontractor. The statute is obviously designed to expedite the payment of proper claims to prevent a general contractor from unjustifiably using funds rightfully belonging to subcontractors. This is accomplished by requiring the general contractor, after notice of a subcontractor's unpaid claim, to escrow funds, to pay above market interest rates and to pay the subcontractor's attorney's fees if funds are not escrowed and the subcontractor prevails." Id., 481-82.
"The objective of statutory construction is to give effect to the intended purpose of the legislature. . . . Where the language of the statute is clear and unambiguous, it is assumed that the words themselves express the intent of the legislature and there is no need for statutory construction or a review of the legislative history." (Citations omitted; internal quotation marks omitted.) Haesche v. Kissner,229 Conn. 213, 223, 640 A.2d 89 (1994).
The language of § 49-41a (b) specifically states that "If payment is not made by . . . any of its subcontractors in accordance with such requirements, . . . the subcontractor of a subcontractor shall set forth its claim against the subcontractor through notice by registered or certified mail. Ten days after the receipt of that notice, . . . the subcontractor shall be liable to its subcontractor, for interest on the amount due and owing at the rate of one per cent per month." General Statutes § 49-41a (b). In CEEC's substituted complaint it alleges that it entered into an agreement with Green Mountain, the subcontractor to the Plainville Senior Center project. CEEC further alleges in its CT Page 13644 complaint that it served a § 49-41a (b) notice upon Butler, the general contractor, to the Plainville Senior Center project. CEEC's status is that of a subcontractor to Green Mountain, the subcontractor on the project. CEEC did not present any evidence at trial that it set forth a claim against Green Mountain as required by § 49-41a (b).
The court finds that, pursuant to the clear and unambiguous language of § 49-41a (b), CEEC was required to set forth its claim against Green Mountain. CEEC failed to present any evidence to the court that it had set forth a claim, pursuant to § 49-41a (b), against Green Mountain. Accordingly, the court dismisses count four of the complaint.
The court dismisses counts one, three and four as to Butler and count three as to Fidelity. Judgment shall enter in favor of CEEC as to count two of the complaint and CEEC is awarded $14,092.29, plus interest, pursuant to § 37-3a, and costs, pursuant to § 49-42. Finally, as previously stated, this court cannot render judgment against Green Mountain as to counts one and five of the complaint because it has not been properly defaulted. The court, therefore, will not render judgment as to Green Mountain.
BY THE COURT
Skolnick, J.